### ERIE RAILROAD CO v PRICE et

Ohio Appeals, 1st Dist, Hamilton Co

No 3915. Decided Nov 2, 1931

Dinsmore, Shohl & Sawyer, Cincinnati, for plaintiff in error.

Hightower & O'Brien, Cincinnati, for defendant in error.

The Railroad Company sued I. N. Price & Company, a partnership for a freight bill and demurrage upon a carload of watermelons, shipped by J. W. Carter on a uniform straight bill of lading from Andersonville, Georgia, to himself at Cincinnati, and diverted by I. N. Price & Company to G. Letezia & Sons, at Mansfield, Ohio, and from whom the charges for such entire carriage were not collected before delivery by the carrier.

The defenses are, that the Prices were not the owners or consignees of the shipment, never accepted it, exercised no dominion over it, except as agent for the consignor Carter to sell and reconsign the shipment; that in the reconsignment or diversion order it was specifically provided that all charges upon said shipment were to follow to destination; further, that the Railroad Company had taken a bond from the original consignor Carter, securing the payment of all freight charges, and it has not exhausted its remedies against Carter and the bond; and, as a last defense, that the Railroad Company has elected to hold Letezia & Sons, the ultimate consignees, who finally accepted the goods, by delivering the shipment to Letezia & Sons without collecting the freight; and it is alleged in the second amended answer that to require Price & Company to pay such charges would be a violation of the Constitution of the State of Ohio and of the laws and Constitution of the United States.

A cross-bill asks for damages against the Railroad Company for the amount of the freight and demurrage, the charge for the entire carriage from Andersonville, Georgia, to Mansfield, Ohio, such damages being due to the negligence of the Railroad Company in delivering such shipment to Letezia & Sons without collecting the charges. The claim of the cross-bill is made alternative upon the failure of the court to sustain the defenses urged by Price & Company.

The reply denies the new matter alleged in the second amended answer.

The record discloses that on July 24, 1926, J. W. Carter, at Andersonville, Georgia, consigned to himself at Cincinnati a carload of watermelons. Upon arrival in Cincinnati, July 29, the Railroad Company being unable to locate Carter, then communicated with the original carrier and was advised to get in touch with I. N. Price & Company, who gave the Railroad Company the endorsed bill of lading and a diversion order upon a printed form furnished by Price & Company to divert the shipment to G. Letezia & Sons, Mansfield, Ohio. The printed form contained the following in print: "Protect through rate; all charges follow, route via", and in lead pencil, "Erie R. R."

The melons arrived at Mansfield July 31, and were refused by Letezia & Sons. After a number of requests of the Railroad Company to Price & Company for instructions, and repeated notices to Price & Company that demurrage was accruing at the rate of $5.00 per day, and on August 11 a final telegram threatening to sell the shipment for charges, Letezia & Sons accepted the melons, which were delivered to them without collecting the charges. Letezia & Sons are insolvent.

Many authorities cited by counsel may be distinguished by the fact, and are not helpful in this case for the reason that here the ultimate consignee did accept the shipment, while in those cited the consignee refused the shipment and also that Price & Company was not the owner or consignee, nor even mentioned in the bill of lading as a "notify".

In the case of S. A. Gerrard Co v New York, New Haven & Hartford Ry Co, (Ohio Bar, September 22, 1931,) the diverter of shipment was the consignee.

There can be no question but that the consignee, Letezia & Sons, having accepted the shipment became primarily liable for the charges and under the Interstate Commerce Commission Act there was a duty upon the Railroad Company to collect or attempt to collect from Letezia & Sons, the consignee, unless the insolvency of Letezia & Sons rendered such action wholly futile.

In the case of Louisville & Nashville Railroad Company v Central Iron & Coal Co., 265 U. S., 59, at page 70, it is held:

"For, under the rule of the Fink Case, if a shipment is accepted, the consignee becomes liable, as a matter of law, for the full amount of the freight charges, wheth-

er they are demanded at the time of delivery, or not until later. His liability satisfies the requirements of the Interstate Commerce Act."

It is contended that Letezia & Sons being unable to pay, Price & Company are secondarily liable. Again, we quote from the case of Louisville & Nashville Rd Co v Central Iron & Coal Co, supra, pages 69, 70:

"It is urged that, if the Central Company was not under a primary obligation to pay the freight charges, it was secondarily liable, because collection from the Smelters Corporation of the balance remaining due had become impossible before the undercharge was discovered. But the trial judge was not compelled so to find. There was evidence that such collection had not become impossible. Confessedly no effort was made to collect from it. Nor was any effort made to collect from Tutwiler & Brooks. Moreover, if a secondary obligation of the Central Company was to be implied from the fact of its causing the coke to be received for transportation, the promise was not necessarily one to pay at any time any freight charges which the carrier might find it impossible to collect from the consignee or his assign."

Coupling this holding of the Supreme Court with the language of the diversion order "Protect through rate; all charges follow", we are forced to the conclusion that any implication other than that Letezia would accept the goods is negatived, and that the Railroad Company accepted the shipment for further transport with the clear understanding that any implication of liability upon Price & Company to be inferred from the mere transfer of the bill of lading and giving the diversion order was negatived by the words quoted, and that it could not look to Price & Company for freight charges unless the shipment was refused by Letezia & Sons, in which case it would have been protected to some extent if not entirely for its charges by its continued possession of the goods and a sale of the shipment, if necessary.

The Railroad Company need not have accepted the shipment from Price & Company under the terms contained in the diversion order. It could have required Price & Company, if they desired the diversion to take place, to pay all charges then due and pre-pay or guarantee the further shipment charges. It did neither, but accepted the shipment and delivered it to an insolvent consignee, without protecting either itself or Price & Company. It may not have known of such insolvency, but when it delivered without collecting, it took its chances under the facts then in its possession of collecting the freight charges from Letezia & Sons later on.

That the Railroad Company and I. N. Price & Company had full right to contract as to the charges is made clear from a review of the Central Iron Company case, supra, as is also that the Railroad Company can not be estopped from collecting freight charges from one liable therefor.

The Interstate Commerce Act provides against any undue or unreasonable preference or advantage to any one liable for charges. This can in no way create an implication of liability where none otherwise exists, nor combat language in a diversion order specifically negativing any inference or implication of liability. It is unnecessary to state that if the agreement between the parties amounted to a preference under the act, that such agreement would be futile.

Our conclusion is not based upon the consideration that the Railroad Company and I. N. Price & Company entered into a contract, freeing Price & Company from liability imposed upon him by law, but that the language of the diversion order specifically negatived **any implication of liability**, arising out of such contact as Price & Company are shown to have had with the shipment, for freight charges then accrued, or for those to be incurred by the continued carriage. See: Roberts Federal Liabilities of Carriers, second edition, Vol. 1, pp. 609, 610, sections 296, 297, and authorities therein noted.

The agency of Price & Company, if it existed, is not a controlling factor in this particular case, especially as there is no evidence that the character of Price & Company as agent was known to the Railroad Company.

We also consider the existence of a bond in favor of the Railroad Company, given by Carter, the original shipper, of no import in determining the issues between these parties.

As there is no dispute as to the essential facts necessary to a determination of the issues, the matter is one entirely of law, the judgment of the court of common pleas of Hamilton County, in reversing the judgment of the municipal court of Cincinnati and in rendering judgment for the defendant in the municipal court, is affirmed.

HAMILTON & CUSHING, JJ, concur.