## PENNSYLVANIA RD CO v SEITER

Ohio Appeals, 1st Dist, Hamilton Co

No 5572. Decided February 20, 1939

Maxwell & Ramsey, Cincinnati, and Frank S. Graydon, Cincinnati, for appellee.

Hightower & O'Brien, Cincinnati, for appellant.

## OPINION

By MATTHEWS, J.

This is an appeal by the defendant on questions of law from a judgment rendered by the Municipal Court of Cincinnati against him for freight charges amounting to $167.28.

The case was heard by the Municipal Court upon the following agreed statement of facts:

"Now comes the plaintiff and defendant by their attorneys and agree to submit this cause to the Court for determination upon the following statement of facts.

"On June 25, 1935, L. E. Holloway & Company, who was the owner of a carload of watermelons, delivered said melons in Car ACL 37674 to the Georgia Southwestern & Gulf Railroad Com-

pany, at Warwick, Georgia, said car being consigned by L. E. Holloway & Company, the original consignor, to itself at Atlanta, Georgia, for diversion. On arrival at Atlanta, Georgia, the consignor, L. E. Holloway & Company, gave diversion orders diverting said car in question to J. E. Radford & Company at Cincinnati. The said shipment of watermelons moved from Atlanta, Georgia, to Cincinnati over the lines of the Cincinnati, New Orleans & Texas Pacific Railway Company. At Cincinnati J. E. Radford & Company ordered said car in question delivered to the defendant, J. J. Seiter. At 1:15 P. M. on June 28, 1935, J. J. Seiter gave instructions to the Cincinnati, New Orleans & Texas Pacific Railway Company to reconsign said car to Dixie Queen Markets, Inc., Winchester, Indiana, routed over the lines of the Pennsylvania Railroad Company. The said instructions from J. J. Seiter reconsigning said shipment specified "to protect the through rate and all freight charges to follow car".

"At the time the said car was delivered by L.E. Holloway & Company, the shipper and consignor, to the initial carrier, the Georgia Southwestern & Gulf Railroad Company, before accepting said car from the consignor, took from said consignor a bond to guarantee payment of all charges on the car in question, which bond was for the benefit of the initial carrier and all subsequent carriers over whose lines this car might travel before final delivery. The carriers who handled this car have not collected any part of the freight charges either from the consignor or under the consignor's bond.

"On June 29, 1935, he Pennsylvania Railroad Company delivered said car of watermelons to the Dixie Queen Markets, Inc., at Winchester. Indiana, at which time the Dixie Queen Markets, Inc., presented The Pennsylvania Railroad Company with their check in payment of all freight charges due on said car from its point of origin to its destination, but said check was not honored by the bank on which it was drawn, and shortly thereafter the Dixie Queen Markets, Inc., was adjudicated a bankrupt and The Pennsylvania Railroad Company did not realize any sum whatsoever out of the bankrupt's estate to apply on said freight charges.

"This action was brought by The Pennsylvania Railroad Company on its behalf and on behalf of all railroads over which said car of watermelons moved for the collection of freight charges not only due it, but due each carrier over whose road the said car of watermelons moved. It is agreed that the amount claimed in plaintiff's bill of particulars, to-wit: $167.28, is in accordance with tariffs filed with the Interstate Commerce Commission, and that if this court finds that plaintiff is entitled to judgment, judgment is to be in the sum of $167.28, with interest at six (6%) per cent from June 29, 1935, and costs."

The termini of this shipment being in different states, this case is, therefore, governed by Acts of Congress relating to interstate commerce.

From this statement it clearly appears that the original owner and consignor was liable from the beginning to pay these freight charges. And, as we interpret the statement, when J. E. Radford & Co. ordered the carrier to deliver the shipment to the defendant J. J. Seiter, it became liable for the freight charges. Likewise, when J. J. Seiter directed the carrier to forward the shipment to Dixie Queen Markets, Inc. at Winchester, Indiana, he accepted the goods as consignee and became liable for all accrued freight and by becoming a re-consignor, he became liable for the freight charges for transporting the shipment from Cincinnati to Winchester. This liability results from the application of the law to his conduct in re-consigning the shipment in the absence of a contract between him and the carrier to the contrary.

The agreed statement discloses no such contract.

The facts in this case are substan-

tially the same as those in **Pennsylvania Railroad Co. v United Colleries, Inc.** 12 Oh Op. 503, recently decided by this Court. In the opinion in that case, we reviewed the state of the law rather fully and do not deem it necessary to repeat here what was said there. Since that decision was announced the case of New York Central R. Co. v Little Jones Coal Co., 25 Fed. Supp. 337, has been decided. In that case the shipper was both consignor and consignee. The bill of lading had endorsed upon it the provision exempting the consignor from liability for freight charges—"The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges." The shipper directed that shipment be reconsigned to Metal Products Company, by written order containing this notation "Charges follow. We are not responsible for freight charges." The shipment having been delivered to The Metal Products Company without prepayment of freight, the action was against the shipper as original consignee. The court pointed out that the "no recourse" clause endorsed on the bill of lading and signed by the defendant protected it against liability as consignor and then said:

"However, defendant was also the consignee; and the question before me is whether or not defendant, as consignee (notwithstanding that it was also the shipper and consignor) having reconsigned the shipment, is liable for the unpaid freight charges."

The court then quoted from a proceeding In the Matter of Bills of Lading before the Interstate Commerce Commission (52 I. C. C. 671), in which the shippers petitioned the Interstate Commerce Commission to authorize an exemption from freight charges by insertion of appropriate language in a written order of re-consignment. This, the Commission refused to do, saying:

" 'The shippers propose that there be inserted in the bill, immediately following the words, 'face of this bill of lading,' the additional words, 'or in a written order of reconsignment.' * * *

" 'We do not regard the shippers' proposal favorably. Its effect would be to impose upon the carrier additional risk and responsibility, not in respect of any common-law or statutory duty of transportation, but in respect of the security of compensation for its services. The end desired by the shippers has to do with the convenience and security of their often-times speculative and impromptu commercial transactions. The business of the carrier is to furnish transportation. Its legal obligations are confined to transportation and the duties incident thereto. It is not obligated to assume risks for the convenience of the consignor which have no direct relationship to its service of transportation.' "

And then, after commenting and approving New York Central Railroad Co. v Warren Ross Lumber Co., 234 N. Y. 261, 137 N. E. 324, 24 A. L. R. 1160, Dare v New York Central R. Co., 20 Fed. (2d.) 379, Wabash R. Co. v Horn, 40 Fed. (2d.) 905, and other cases, the court concurred in the conclusion reached in them saying:

"The weight of authority holds that the reconsignment was an exercise of dominion over the shipments which was consistent with ownership thereof by defendant, and is sufficient to fasten upon it liability for the freight charges.

"Defendant's liability for the freight charges having become fixed, no subsequent acts or omissions on the part of plaintiff could discharge that liability. In the case of Louisville & N. R. Co. v Central Iron & Coal Company, 265 U. S. 59, 44 S. Cut 441, 68 L. Ed. 900, the Supreme Court said (page 442): 'Nor could any act or omission of the carrier (except the running of the statute of limitations) estop or preclude it from enforcing payment of the full amount by a person liable therefor.' "

Applying the rule of these decisions, court held the defendant liable for the freight charges notwithstanding the statement in the reconsignment order—"Charges follow. We are not responsible for freight charges."

But it is said that which has been said is inconsistent with the decision of this court in Erie Railroad Co. v Price, 11 Abs 656. That was an action to recover the freight charges on a shipment in 1926. In 1927 the Interstate Commerce Act was amended. The amendment relevant to this case is c. 510, sec. 1, 44 Stat. 1447, which is found in the 1938 Supplement to 49 U. S. C. A., section 3 (2) at page 24. That section relates to payment of freight and we quote the parts added by the amendment:

"Where carriers by railroad are instructed by a shipper or consignor to deliver property transported by such carriers to a consignee other than the shipper or consignor, such consignee shall not be legally liable for transportation charges in respect of the transportation of such property (beyond those billed against him at the time of delivery for which he is otherwise liable) which may be found to be due after the property has been delivered to him, if the consignee (a) is an agent only and has no beneficial title in the property, and (b) prior to delivery of the property has notified the delivering carrier in writing of the fact of such agency and absence of beneficial title, and in the case of a shipment reconsigned or diverted to a point other than that specified in the original bill of lading, has also notified the delivering carrier in writing of the name and address of the beneficial owner of the property. In such cases the shipper or consignor, or, in the case of a shipment so reconsigned or diverted, the beneficial owner, shall be liable for such additional charges, irrespective of any provisions to the contrary in the bill of lading or in the contract under which the shipment was made."

This amendment is applicable to this case and under its terms a person who occupies the dual relation of consignor and consignee in order to prevent liability from attaching is required to notify the carrier in writing of two things in advance, (a) that he is agent only and has no beneficial interest, and (b) the name and address of the beneficial owner. If he can not or does not so notify the carrier at the time, he is liable for the freight charges. There was no such statutory provision when Erie R. R. Co. v Price was decided.

For these reasons, the judgment is affirmed.

HAMILTON, PJ, and ROSS, J, concur.