128 N.J. Super. 179 (1974)
319 A.2d 277
PENBROOK HAULING CO., INC., PLAINTIFF,
v.
SOVEREIGN CONSTRUCTION CO., LTD., DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided March 19, 1974.
*180 Mr. Richard E. Brennan for plaintiff (Messrs. Shanley & Fisher, attorneys).
Mr. Spencer N. Miller for defendant (Messrs. Krivit, Miller, Galdieri & De Luca, attorneys).
GELMAN, J.S.C.
Plaintiff Penbrook Hauling Co., Inc. (Penbrook) is a common motor carrier and it instituted this action against Sovereign Construction Co., Ltd. (Sovereign) to recover unpaid freight charges for the transportation of freight received by Sovereign as consignee.
Sovereign was the prime contractor for the construction of a building at the United States Military Academy, West Point, New York. Under date of October 3, 1968, it entered into a subcontract with Dauphin Steel and Engineering Co. (Dauphin) whereby Dauphin was to supply at a fixed price the structural steel required to complete the prime contract. The subcontract price of $520,000 included all delivery charges which were payable by Dauphin. Deliveries of steel by Dauphin commenced in the latter part of 1968 and continued through August 11, 1970. All deliveries were made on bills of lading containing a notation that the freight charges were "prepaid." The steel deliveries were accepted by Sovereign at the job site and were ultimately incorporated into the building under construction.
Dauphin from time to time submitted requisitions for payment to Sovereign, and each requisition contained a certification by Dauphin to the effect that all of Dauphin's suppliers had been paid for the work covered by the requisition. On August 28, 1970, after the last cash payment had been made by Sovereign to Dauphin, a representative of Penbrook called Sovereign's project manager and informed him that Dauphin had not paid freight charges for steel shipments *181 made between May 11 and August 11, 1970. The unpaid freight charges totaled $19,713.19, and Penbrook requested Sovereign's assistance in collecting the account from sums anticipated to be due to Dauphin under the subcontract. Subsequent correspondence between the parties included an acknowledgment by Penbrook that it had "extended Dauphin this credit" and was seeking Sovereign's assistance in effecting collection.
In April 1971 a final settlement was reached on the amount due Dauphin under the subcontract. Because of charge-backs by Sovereign and the United States against Dauphin, and payments made by Sovereign on behalf of Dauphin to Dauphin's creditors, the net result was that Sovereign paid to Dauphin or on its acount a sum in excess of the amount due Dauphin under the subcontract.
Dauphin having become insolvent in the meanwhile, Penbrook now seeks recovery of all unpaid freight charges from Sovereign as consignee of the goods shipped by virtue of provisions of the Motor Carrier Act, 49 U.S.C.A. §§ 316(d), 317(b), 323, which in substance require interstate motor carriers to adhere to and collect freight charges in accordance with the filed rates and tariffs and prohibit discriminatory or preferential rate treatment by carriers. It is said that the cited provisions of the Motor Carrier Act impose absolute liability upon a consignee for payment of all freight charges, and that the Congressional policy may not be thwarted by any conduct on the part of the carrier which might otherwise estop it from asserting such liability.
In support of its position plaintiff relies princpally upon Southern Pacfic Co. v. Wheaton Brass Works, 5 N.J. 594 (1950), cert. den. 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed. 1343 (1951). In Wheaton Brass defendant-consignee had received a rail freight shipment under a bill of lading which stated that freight charges were to be paid by the consignee. An invoice accompanying the bill of lading, however, indicated that the freight charges had been prepaid, and plaintiff's agent informed defendant that the shipping *182 charges were in fact prepaid, whereupon the consignee accepted the goods. Subsequently it was determined that the goods had been improperly classified by the shipper, and the carrier instituted suit against the consignee to collect the additional freight charges due under the filed tariffs. Our Supreme Court, relying upon provisions of the Tranportation Act (49 U.S.C.A. § 6), corresponding to those contained in the Motor Carrier Act, supra, upheld the carrier's right to collect the additional charges from the consignee. Justice Burling said:
The foregoing section of the Act has been construed on numerous occasions by the federal courts and it has become well settled that the purpose of the act is to prevent preferences and to enforce compliance with the requirements of the pertinent paragraph that a carrier shall not charge less than the rates specified in his filed schedules, and that it is the right and duty of the carrier to collect the full tariff charges for freight delivered. Nor can any act or omission on the part of the carrier, except the running of the statute of limitations, estop or preclude the carrier from recovering the full amount of the proper charges from a person liable therefor, the parties to the consignment being, as a matter of law, charged with the proper schedule rates. See annotation, Title 49 U.S.C.A., sec. 6, par. (7), p. 284. One of objectives of the act is to prevent discrimination by carriers in their rates in favor of preferred shippers and to stabilize rates beyond the control of the carrier and the persons liable therefor. Failure by a carrier to collect the proper charges cannot release a person liable therefor as this would circumvent the purpose of the act and be in defiance of its provision forbidding a remission "in any manner or by any device any portion of the rates * * * and charges so specified". [5 N.J. at 598-599]
The court in Wheaton Brass cited Pittsburgh, C.C. & St. L.R. Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151 (1919), for the proposition that
* * * that the defendant could not invoke the principle of estoppel against the carrier's right to collect the legal rate as "Estoppel could not become the means of successfully avoiding the requirement of the act as to equal rates, in violation of the provisions of the statute. [Id. at 600]
*183 Since the decision in Wheaton Brass numerous federal appellate courts have had occasion to deal with the estoppel question as between carrier and consignee both as to rail and motor carrier freight shipments. See Missouri Pacific R.R. Co. v. National Milling Co., 276 F. Supp. 367 (D.N.J. 1967), aff'd 409 F.2d 882 (3 Cir.1969); Consolidated Freightways Corp. v. Admiral Corp., 442 F.2d 56 (7 Cir.1971); Southern Pac. Transp. Co. v. Campbell Soup Co., 455 F.2d 1219 (8 Cir.1972); cf. Farrell Lines Inc. v. Titan Industrial Corp., 306 F. Supp. 1348 (S.D.N.Y. 1969), aff'd 419 F.2d 835 (2 Cir.1969), cert. den. 397 U.S. 1042, 90 S.Ct. 1365, 25 L.Ed.2d 653 (1970) (marine carrier); see also, Tom Hicks Transfer Co., Inc. v. Ford, Bacon & Davis Texas Inc., 482 S.W.2d 364 (Tex. Civ. App. 1972); but cf. Empire Petroleum Co. v. Sinclair Pipeline Co., 282 F.2d 913 (10 Cir.1960) (oil pipeline carrier). In each instance the federal courts have distinguished between situations involving freight charges made by the carrier at rates less than the filed tariffs and those where the correct tariff was charged but the carrier delivered the goods under prepaid bills of lading by reason of an extension of credit to the consignor or shipper. In the undercharge cases, of which Wheaton Brass and Fink are representative, the courts have generally held that the consignee remains liable for all freight charges due in accordance with the filed tariffs, regardless of the circumstances under which delivery was accepted by the consignee. The reasons given for rejecting the application of equitable estoppel against the carrier are as set forth in the quotations from Wheaton Brass, supra. It might also be noted that there is an absence of equity in the position of the consignee in such a situation; in the usual commercial transaction he would have been obligated to pay the shipper the proper charge as part of the cost of the goods delivered, and if he were not liable to the carrier he would receive a "windfall" to the extent that the charge was less than that required under the filed tariff.
*184 However, the federal courts have uniformly held that where the rate charged was in accordance with the filed tariffs and the carrier delivered the goods pursuant to prepaid bills of lading, the consignee may invoke equitable estoppel as a defense against the carrier's claim for the unpaid freight charges if the consignee has paid the freight charges to the shipper in reliance upon the bills of lading. For example, in Consolidated Freightways Corp. v. Admiral Corp., supra, defendant-consignee received shipments by motor carrier over a period of several months. In each instance the goods moved on bills of lading marked "prepaid" or "to be prepaid," and the carrier invoiced the freight charges to the shipper who in turn invoiced the defendant. Defendant paid all freight charges directly to the shipper and was not notified by the carrier of the shipper's default until after the last of the disputed shipments had been delivered. The court, after declaring that the Motor Carrier Act did not impose absolute liability upon a consignee for freight charges, held that recognition of equitable estoppel as a defense to the carrier's action does not interfere with the Congressional policy to prevent preferential rate treatment. In reaching that conclusion the court said:
* * * [We] reject plaintiff's claim that the principles of equitable estoppel have no application in any action for the collection of freight charges. * * * The crucial question is * * * whether the use of estoppel to prevent recovery on the facts of the particular case contradicts the statutory policy of Section 223 to curb discriminatory treatment of shippers.
In this case, there is no discernible conflict between the application of equitable principles to bar the carrier's recovery and the statutory proscription against discriminatory treatment of shippers. Requiring double payment of the charge by Admiral would not further the statutory policy of preventing "unjust discrimination or undue preference." [442 F.2d at 62-63]
In Admiral the court also noted that the carrier's extension of credit to the shipper for a period in excess of seven days was in itself a violation of Interstate Commerce Commission regulations promulgated under the Motor Carrier *185 Act. 442 F.2d at 60. In the court's view, that violation constituted additional equitable grounds for the denial of recovery to the carrier. The same factual pattern exists in the case at bar, and it was Penbrook's violation of the ICC's credit regulations which occasioned its inability to collect the freight charges from the shipper.
Having found that Sovereign received the shipments here in reliance upon the plaintiff's representations that the freight charges were prepaid and that Sovereign paid Dauphin the freight charges as part of the contract price, I conclude the defense of equitable estoppel is available to Sovereign under federal law and has been factually established under the principles of estoppel recognized in the federal decisions. The fact that our Supreme Court reached a different result on different facts in Wheaton Brass is not dispositive of the issue here. In interpreting and applying federal statutes we are bound by federal and not state decisional law. See Southern Pacific Co. v. Wheaton Brass Works, supra 5 N.J. at 598.
Judgment will be entered dismissing the complaint with costs.