CHICAGO & NORTHWESTERN TRANSPORTATION COMPANY, Respondent, v. KROHN CARTAGE COMPANY, INC., Appellant.

No. 75–582. *Submitted on briefs June 2, 1977.—Decided July 1, 1977.*
(Also reported in 255 N. W. 2d 310.)

40

For the appellant the cause was submitted on the brief of *Dineen & Alexander* of Milwaukee.

For the respondent the cause was submitted on the brief of *Willard P. Techmeier* and *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee.

HEFFERNAN, J.   This is an appeal from a judgment finding the defendant, Krohn Cartage Company, Inc., liable for freight charges for furniture shipped on the plaintiff's railroad.

It is undisputed that both parties are subject to the Interstate Commerce Act, Title 49, and particularly sec. 3(2). The matter was submitted to the court on an agreed statement of facts. That statement recited that the plaintiff's railroad made two shipments of freight, each pursuant to a shipping order naming Hedstrom Company as the shipper and the defendant, Krohn Cartage Company, Inc., as consignee. One shipment originated in Alabama, the other in New Hampshire. The order originating in Alabama noted, "This car is to be stopped in transit to partially unload 810 Ctns. c/o Big 'D' Warehouse, 7401 South Cicero Avenue, Chicago, Il-

linois." It further recited, "Bill all freight charges, including stop-off charge to Big 'D' Warehouse, 7401 South Cicero Avenue, Chicago, Illinois."

The order originating in New Hampshire also recited that the railroad car was to stop for partial unloading at the Big "D" Warehouse in Chicago. Thirteen thousand, nine hundred seventy-eight pounds of the freight were to remain in Chicago, and the remaining 1,347 pounds were to be delivered at the defendant's facility in Milwaukee. This shipping order recited that all charges were to be billed to Furniture Trucking Inc. in Oak Lawn, Illinois.

The record indicates that the railroad billed Furniture Trucking and Big "D" for the freight charges; but, when they were uncollectible, a demand for payment of the entire freight charge was made upon Krohn Cartage. Because Krohn Cartage was named as the consignee in both orders, the railroad claims that Krohn is responsible for the entire freight bill. The record indicates, however, that only a small portion of the total orders, the shipping charge for which was $139, actually was delivered to Krohn in Milwaukee.

It was stipulated that Krohn had no beneficial title in the goods; but, nevertheless, it was urged by the railroad that Krohn was liable as consignee, because it had not given written notice to the railroad prior to delivery that it was an agent only and had no beneficial interest in the property.

The trial court held that, as consignee, Krohn was liable for the entire delivery charges, because it had not given the written notice required by the Interstate Commerce Act. The court, accordingly, held Krohn liable for all the shipping charges in connection with the two deliveries, not only in respect to the portion of the shipment that was received and accepted by Krohn, but also in respect to the portion of the shipment that was dropped off in Chicago.

While we conclude that the trial judge properly stated the law in respect to circumstances where a consignee has actually received delivery of the property, that proposition of law is inapplicable where a consignee does not receive actual delivery or has not otherwise exercised dominion or control over the shipment. In the instant case, only a small portion of the two shipments was actually received by Krohn; and its liability is limited to $139, the shipping charge for the goods delivered in Milwaukee.

Accordingly, although we affirm the judgment, we modify to impose liability for only the freight charges for the furniture received by Krohn.

Both the railroad and Krohn are subject to the provisions of the Interstate Commerce Act. Title 49 U.S.C., sec. 3(2), in part, provides:

". . . Where carriers by railroad are instructed by a shipper or consignor to deliver property transported by such carriers to a consignee other than the shipper or consignor, such consignee shall not be legally liable for transportation charges in respect of the transportation of such property (beyond those billed against him at the time of delivery for which he is otherwise liable) which may be found to be due after the property has been delivered to him, if the consignee (a) is an agent only and has no beneficial title in the property, and (b) prior to delivery of the property has notified the delivering carrier in writing of the fact of such agency and absence of beneficial title . . . ."

The trial judge correctly held that this section imposes strict liability upon a consignee unless, prior to delivery of the property, the consignee has notified the delivering carrier in writing that it is acting as an agent only and that it has no beneficial title in the goods. What the trial judge overlooked is that the liability of the consignee arises only as the consequence of either actually or constructively accepting delivery.

The law in this respect is well summarized in *States Marine International, Inc. v. Seattle-First National Bank,* 524 F.2d 245 (9th Cir. 1975). This case points out that it is the shipper, rather than the consignee, who is primarily liable to the carrier for freight charges.

In the instant case, the shipper, Hedstrom, apparently is uncollectible; and, accordingly, our concern is with whether Krohn, as the nominal consignee, is secondarily liable.

The shipping documents in the instant case impose no express liability upon Krohn as the consignee. Under such circumstances, *States Marine International, Inc., supra,* points out:

". . . courts must look beyond the express contract to the conduct of the consignee to ascertain whether a promise by him to pay the freight charges may be implied. . . .

"The most obvious indication of a consignee's implied agreement to pay for freight charges occurs when he accepts the goods himself, indicating that they are his own and not the shipper's. . . . 'the consignee is *prima facie* liable for the payment of the freight charges when he accepts the goods from the carrier.' " (at 248)

*States Marine* also indicates that, even where there is no actual acceptance of the goods by the consignee, presumptive ownership and the obligation to pay the charges may arise from the consignee's exercise of the dominion and control over the shipment. Hence, a re-consignment by the consignee, although it never receives the goods, may result in an implied acceptance of the goods and give rise to liability for the freight charges.

Merely being named as a consignee of the shipment in the absence of an express contract or in the absence of conduct which will, by implication, impose liability does

not subject a consignee to the obligation to pay the freight charges. The Arizona Court of Appeals stated the rule in *Arizona Feeds v. South Pacific Transportation Co.*, 21 Ariz. App. 346, 353, 519 P.2d 199, 206 (1974):

"The mere designation in the bill of lading of the consignee as the one liable for the freight charges does not create a contractual relationship between the carrier and the consignee, rendering the latter liable therefor, but rather, the consignee becomes liable therefor when an obligation arises on his part from presumptive ownership, acceptance of goods and the services rendered, and the benefits conferred by the carrier for such charges."

In *Waters v. Pfister & Vogel Leather Co.*, 176 Wis. 16, 186 N.W. 173 (1922), a similar rationale was followed. This court stressed that, where there was no express contract between the carrier and the consignee, the consignee nevertheless, by its conduct, may become liable for the shipping charges. That case stressed that liability arises out of the acceptance of the goods. It stated, "It is the acceptance of the goods . . . that makes the consignee a party to the contract." (at 20)

Similarly, in *Werner Transportation Co. v. Shimon*, 249 Wis. 87, 23 N.W.2d 519 (1946), this court in 1946 stated that the mere designation of consignee imposes no liability, but "if he accepts goods in the capacity of owner the law implies a promise on his part to pay the charges." (at 89)

The stipulated facts reveal that Krohn never received nor accepted delivery on the portion of the order delivered in Chicago. No conduct on its part can give rise to the inference that it treated such portion of the goods as though it were the beneficial owner. The obligation to pay for the shipping charges can arise only from the actual acceptance of delivery or by other conduct which

manifests dominion and control over the shipment. None of Krohn's conduct in respect to the deliveries at Chicago impliedly point to it as being liable for the shipping charges.

In respect to the portions of the orders that were received in Milwaukee, however, it is clear that it actually accepted delivery, and it is liable for those charges.

It is contended, however, by Krohn, even though Title 49 U.S.C., sec. 3(2) requires a notification to the carrier in writing in advance of delivery that the consignee is acting only as an agent and has no beneficial title, that such notification *in writing* was unnecessary because the railroad had actual notice that Krohn had no beneficial title in the property. The stipulation of facts, however, does not state that the railroad knew that Krohn was an agent only or knew that it had no beneficial title. The stipulation recites that Krohn had received numerous other shipments of freight at prior times, but it fails to recite that the railroad had any knowledge of the exact status of Krohn in respect to ownership or agency of those prior shipments or that the railroad had actual knowledge of Krohn's relationship to the shipments in question here. Since there is no evidence that the railroad had actual notice of Krohn's limited interest, we do not determine whether actual notice would be a sufficient substitute for the specific written notice required by the Interstate Commerce Act. Written notice, however, as required by the Act, was not given.

Under Title 49 U.S.C., sec. 3(2), *supra,* a consignee who accepts delivery and fails to comply with the notice provisions contained therein is liable for the shipping charges on the goods accepted. Krohn accepted the balance of the shipments after the larger portion was dropped off at Chicago. It is liable for the charges on the freight which it accepted at Milwaukee.[1]

---

[1] We are mindful that Krohn disclaims liability for any portion of the two shipments on grounds of estoppel. The only situation

The record also demonstrates that the freight charges of $139 for the goods received in Milwaukee have been collected by Krohn from the ultimate recipients of the deliveries.

The judgment for the plaintiff must be modified by permitting recovery of freight charges for only the portion of the shipments actually received by Krohn.

*By the Court.*—Judgment modified and, as modified, affirmed.

brought to our attention in which courts have applied estoppel to preclude recovery by a carrier is where the shipping documents state that freight charges have been prepaid, and the goods are accepted in reliance on this representation. The doctrine of estoppel does not apply where the shipping documents indicate that a third party is to be billed for freight charges. *See, Consolidated Freightways Corporation of Delaware v. Admiral Corp.,* 442 F.2d 56 (7th Cir. 1971); *Consolidated Freightways Corporation of Delaware v. Eddy,* 266 Ore. 385, 513 P.2d 1161 (1973); *Southern Pacific Co. v. United States,* 243 F. Supp. 839 (D.C.D. Del. 1965); *Penbrook Hauling Co., Inc. v. Sovereign Construction Co., Ltd.,* 128 N.J. Super. 179, 319 A.2d 277 (1974).