## CONSOLIDATED RAIL CORPORATION *vs.* HALLAMORE MOTOR TRANSPORTATION, INC.

Suffolk. November 8, 1984. — February 11, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Carrier*, Liability of consignee for freight charges.

A motor common carrier was not liable under common law principles to a
rail common carrier for the charges for carrying a certain shipment by
rail, where the bill of lading and the waybill disclosed that the motor
carrier, which unloaded the shipment and carried it to its ultimate desti-
nation, was acting as the agent of the consignee. [57-59]

CIVIL ACTION commenced in the Boston Municipal Court
Department on January 7, 1980.

The case was heard by *J. Peter Donovan*, J.

*Zachary R. Karol* for the defendant.

*Michael A. Fitzhugh* for the plaintiff.

WILKINS, J. The plaintiff (Conrail), a common carrier, seeks
to recover charges for carrying freight by rail on two occasions
from Cedar Rapids, Iowa, to Worcester, from the defendant
(Hallamore), a motor common carrier, which unloaded the
cargo and carried it to Quonset Point, Rhode Island. A judge
of the Municipal Court of the City of Boston considered the
case on a statement of agreed facts and found for Conrail. The
Appellate Division agreed with the trial judge and dismissed
the report to it. Judgment should have been entered for Halla-
more.

We summarize the facts. Hallamore, without its authoriza-
tion or knowledge (until this action was commenced), was
named by someone other than Conrail as consignee of the
shipments on each bill of lading and each waybill. As Conrail
knew prior to delivering the cargo to Hallamore, each bill of
lading and each waybill stated that the cargo was for transship-

ment to Eastern Steel Services, Inc., care of General Dynamics, Quonset Point, Rhode Island. These documents also stated that freight bills should be sent to Davis Machinery, Inc., in King of Prussia, Pennsylvania. As Conrail's field terminal supervisor in Worcester knew, Hallamore had no beneficial interest in the cargo and was acting as an agent for the sole purpose of transshipping the cargo to Rhode Island. Hallamore did not give Conrail written notice of its lack of beneficial ownership of the cargo before unloading it. Conrail did not request payment from Hallamore when Hallamore unloaded the cargo.

Hallamore's liability is to be determined by common law principles and is not governed by any provision of the Interstate Commerce Act (49 U.S.C. § 501-11917 [1982]). Conrail argues that § 10744 (a) (1) of that act, which is set forth in the margin,[1] dictates that Hallamore is liable because Hallamore did not furnish Conrail with written notice of its "agency" status and the "absence of beneficial title" before delivery of the cargo. That section provides, however, that the consignee is liable for rates billed "for which the consignee is otherwise liable." "Congress left the initial determination of a party's liability for freight charges to express contractual agreement or implication of law." *Consolidated Freightways Corp.* v. *Admiral Corp.*, 442 F.2d 56, 62 (7th Cir. 1971). See *Louisville & N.R.R.* v. *Central Iron & Coal Co.*, 265 U.S. 59, 69-70 (1924); *Pittsburgh, Cincinnati, Chicago & St. L.Ry.* v. *Fink*, 250 U.S. 577, 582 (1919). In the absence

[1] Section 10744 (a) (1). "Liability for payment of rates for transportation for a shipment of property by a shipper or consignor to a consignee other than the shipper or consignor, is determined under this subsection when the transportation is provided by a rail, motor, or water common carrier under this subtitle. When the shipper or consignor instructs the carrier transporting the property to deliver it to a consignee that is an agent only, not having beneficial title to the property, the consignee is liable for rates billed at the time of delivery for which the consignee is otherwise liable, but not for additional rates that may be found to be due after delivery if the consignee gives written notice to the delivering carrier before delivery of the property —

"(A) of the agency and absence of beneficial title; and

"(B) of the name and address of the beneficial owner of the property if it is reconsigned or diverted to a place other than the place specified in the original bill of lading."

of any other statute that imposes liability on Hallamore, our task is to determine whether, on common law principles, Hallamore is liable for the freight charges.

The question is whether a common carrier, such as Hallamore, which does not know that it has been named as a consignee of cargo and is acting only as an agent to transship that cargo to its ultimate destination, is liable for freight charges to a rail carrier, such as Conrail, which knows that its successor motor common carrier is acting only as an agent. In the absence of an express agreement binding Hallamore, its liability must be determined by considering whether liability should be implied in the circumstances. *American Ry. Express Co.* v. *Mohawk Dairy Co.*, 250 Mass. 1, 9 (1924). Acceptance of the goods by a consignee results in liability for the charges of transportation "in the ordinary case and apart from other controlling factors." *Id.* See *Pittsburgh, Cincinnati, Chicago & St. L. Ry.* v. *Fink, supra* at 581. If a consignee, acting as an agent, redirects the goods or otherwise treats the goods as if it were the beneficial owner, the consignee may become liable for freight charges. *Pennsylvania R.R.* v. *Lord & Spencer, Inc.*, 295 Mass. 179, 184-185 (1936). See *Northwestern Pac. R.R.* v. *Burchwell Co.*, 349 F.2d 497, 501 (5th Cir. 1965); *Chicago & Nw. Transp. Co.* v. *Krohn Cartage Co.*, 79 Wis. 2d 39, 45-46 (1977). Cf. *Pennsylvania Rd.* v. *Seiter*, 61 Ohio App. 497, 503 (1939). However, a consignment to an agent, known by the carrier to be an agent, does not make the agent liable at common law in the absence of other circumstances, such as an express or implied agreement by the consignee to pay the freight. *Boston & Me. R.R.* v. *Whitcher*, 1 Allen 497, 498 (1861). See *New York Cent. & H.R. R.R.* v. *York & Whitney Co.*, 230 Mass. 206, 217 (1918), rev'd in part on the ground of a Federal statute, 256 U.S. 406 (1921). In *States Marine Int'l, Inc.* v. *Seattle-First Nat'l Bank*, 524 F.2d 245 (9th Cir. 1975), a bank which had a security interest in goods was named the consignee of the goods in bills of lading without its knowledge. The bank was not liable to pay shipping charges because it dealt with the goods in its capacity as a lender rather than as a beneficial owner.

Conrail had knowledge of Hallamore's agency from the bills of lading and from the waybills.[2] Those documents referred to the fact that Hallamore was consignee for transshipment to Eastern Steel Services, Inc., in Rhode Island, and that a corporation in Pennsylvania was responsible for freight charges. Under the common law, as indicated above, a consignee known to be an agent is not liable for freight charges unless there are other circumstances calling for liability. When the consignee does not even know it is named as a consignee of the goods, the case for liability is even weaker. There are no circumstances in this case for implying an obligation by Hallamore to pay the freight charges.[3]

The order dismissing the report is reversed, the finding for the plaintiff is to be vacated, and judgment is to be entered for the defendant.

*So ordered.*

---

[2] We do not rely on the fact that Conrail's field terminal supervisor knew that Hallamore had no beneficial interest in the cargo and was acting only as an agent for its transshipment. The title of Conrail's agent suggests that it was within his authority to receive such information, thus binding Conrail. The authority of an agent is, however, a question of fact. *Baldwin's Steel Erection Co.* v. *Champy Constr. Co.*, 353 Mass. 711, 715 (1968). *Costonis* v. *Medford Hous. Auth.*, 343 Mass. 108, 113 (1961). The field terminal supervisor's authority to receive notices of agency is not established as a matter of law on the record. The shipping documents themselves disclosed Hallamore's agency status.

[3] If the requirement of written notice under 49 U.S.C. § 10744 (a) (1) were applicable to this case, contrary to our holding, Conrail's actual knowledge of Hallamore's agency status from the bills of lading and waybills might satisfy the purpose of the statute. It was so held in *Penn Cent. Transp. Co.* v. *United Aero Marine Servs., Inc.*, 91 Misc. 2d 839, 840 (N.Y. Civ. Ct. 1977) ("The carrier cannot blind itself to those writings [waybills] and insist that the writings of agency and disclaimer of title must come from the consignee"). The question whether actual notice would be a sufficient substitute for the written notice required by the Federal act was noted, but not presented on the facts, in *Chicago & Nw. Transp. Co.* v. *Krohn Cartage Co.*, 79 Wis. 2d 39, 46 (1977).