KANSALLIS FINANCE LTD.,
Plaintiff, Appellant,

v.

Daniel J. FERN, et al., Defendants,
Appellees.

KANSALLIS FINANCE LTD.,
Plaintiff, Appellee,

v.

Daniel J. FERN, et al., Defendants,
Appellants.

Nos. 93–2381, 94–1010.

United States Court of Appeals,
First Circuit.

Heard Sept. 13, 1994.

Decided Nov. 2, 1994.

James W. Murphy with whom Frederic L. Ellis, Boston, MA, was on brief, for Kansallis Finance Ltd.

Erik Lund with whom Susan S. Riedel, Boston, MA, was on brief, for Daniel J. Fern, et al.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and STAHL, Circuit Judge.

COFFIN, Senior Circuit Judge.

Plaintiff Kansallis Finance Ltd. ("Kansallis") brought this diversity suit against four lawyers, asserting that they were vicariously liable for fraud committed by their purported law partner. A jury trial resulted in judgment for the defendants, Daniel Fern, Richard Anderson, Robert Donahue and Charles Sabatt. Both plaintiff and defendants now appeal, raising challenges to the sufficiency of the evidence to support various fact-findings, as well as two questions of Massachusetts law on which there is either conflicting or no clearly established precedent. We uphold the factual findings and certify the legal questions to the Massachusetts Supreme Judicial Court ("SJC").

## Background

This lawsuit stems from a loan and lease financing transaction whose precise details are not relevant to any of the issues on appeal. What is important is that, in advance of consummating the loan, Kansallis sought and obtained an opinion letter from defendants' purported law partner, Stephen Jones, which was issued on letterhead captioned "Fern, Anderson, Donahue, Jones & Sabatt, P.A." The letter contained several intentional misrepresentations concerning the transaction and was part of a conspiracy by Jones and others (though not any of the defendants here) to defraud Kansallis. Jones was later criminally convicted for his part in the conspiracy, in which Kansallis lost more than $880,000. Unable to collect from Jones or any of the loan's guarantors, Kansallis sought compensation from defendants on the theory that they and Jones were either actual partners or partners by estop-

pel, and that they were liable for the fraudulent opinion letter Jones caused to be issued on the firm stationery.[1]

The case went to trial. Both the judge and jury found that Jones and the defendants were partners at the relevant time,[2] but, for different reasons, they concluded that defendants were not liable for Jones's conduct. The jury's verdict was based on its findings that Jones did not have authority to issue the opinion letter on behalf of the partnership, and that the issuance of the opinion letter was not within the scope of the partnership. The district court made independent findings of fact on plaintiff's claim under a Massachusetts consumer protection statute, Mass.Gen.L. ch. 93A. Unlike the jury, it found that the partnership *had* clothed Jones with apparent authority to issue the letter on its behalf. Nonetheless, the court went on to hold, as a matter of law, that "innocent" partners may not be held vicariously liable under 93A for their partners' fraudulent acts. In other words, the court held that a partner, entirely unaware and uninvolved with another partner's fraud, is immune from vicarious liability under 93A, even when the conduct constituting the fraud was authorized.

The court also found that the conduct giving rise to the 93A claim arose "substantially in Massachusetts," thus making it subject to the statute. *See* Mass.Gen.L. ch. 93A, § 11.

On appeal, each side challenges the factual findings adverse to its position. Kansallis also asserts two legal errors. First, it finds error in the court's ruling that vicarious liability cannot attach to "innocent" partners in a 93A claim. Instead, based on the court's fact-finding that the letter was issued with the firm's apparent authority, Kansallis asserts that normal principles of vicarious liability as among partners should apply to make defendants liable for Jones's fraud. Second, it argues that the jury's finding that the letter was not issued in the ordinary course of the partnership was made only upon an erroneous jury instruction. Specifi-

cally, Kansallis submits that it was error to charge the jury that, for the letter to have been issued in the course of the partnership, Jones must have been motivated at least in part by the intent to serve the partnership. It argues that, while such motivation is required in an employer-employee context, no such requirement is present here.

### Discussion

We first review the evidence to support the various fact-findings. Because we affirm these findings, we are faced squarely with the two legal issues raised by Kansallis. Finding no clearly established precedent on one of the questions, and conflicting precedent on the other, we certify both to the SJC pursuant to its Rule 1:03.

### I. Sufficiency of the Evidence to Support the Fact–Findings

Defendants argue that it was error for both the jury and the judge to find that they were Jones's partners. They also submit that it was error for the judge to find that the partnership had granted Jones apparent authority to cause the letter to be issued on its behalf. Finally, they find error in the judge's determination that the conduct giving rise to the 93A claim occurred primarily and substantially within Massachusetts. Plaintiff, for its part, asserts that it was error for the jury to decide that defendants had *not* granted authority to Jones to issue the opinion letter. We find no merit in any of these contentions.

### A. Partnership

 Under Massachusetts law, a partnership "is an association of two or more persons to carry on as co-owners a business for profit." Mass.Gen.L. ch. 108A, § 6. *See also Loft v. Lapidus*, 936 F.2d 633, 636 (1st Cir.1991). Several factors are considered to determine if a partnership exists. A non-exhaustive list includes: whether there is "(1)

---

**1.** Jones did not personally sign the letter, but instead arranged for a third party to do so. Both the jury and the district court found that, by this conduct, Jones adopted or ratified the issuance of the opinion letter. Since no party has appealed these findings, we take them as given.

**2.** The district court also found that, even if they were not actual partners, they were partners by estoppel.

an agreement by the parties manifesting their intention to associate in a partnership (2) a sharing by the parties of profits and losses, and (3) participation by the parties in the control or management of the enterprise." *Fenton v. Bryan,* 33 Mass.App.Ct. 688, 691, 604 N.E.2d 56, 58 (1992). *See also* Mass.Gen.L. ch. 108A, § 7 (providing additional rules for determining the existence of a partnership). While a partnership undoubtedly requires an agreement among the partners, that agreement need not be in writing. Rather, intent to carry on business as partners may be inferred from the partners' words and acts. *Loft,* 936 F.2d at 636–37.

■ We uphold the fact-findings below on the existence of a partnership unless that determination was clearly erroneous, *id.* at 636, a standard that requires "'the definite and firm conviction that a mistake has been committed,'" *American Title Ins. Co. v. East West Financial,* 16 F.3d 449, 453 (1st Cir. 1994) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948)).

■ The evidence adduced at trial was sufficient to support the finding that defendants and Jones were indeed law partners at the time the fraudulent opinion letter was issued. It is uncontroverted that Daniel Fern and Richard Anderson became law partners in the early 1960s and that Robert Donahue and Stephen Jones joined that partnership in the 1970s. Defendants maintain that, while Sabatt joined the firm in the early 1980s, he did so as an employee only. They also submit that the partnership dissolved in 1981 and, while all four defendants and Jones continued to share office space, secretarial services, letterhead, a central card file of clients, and so forth, they did so as a professional association of individual practitioners only, laying much emphasis on the fact that

their letterhead used the denomination "P.A." after listing their names.

The jury and district court were entitled to discredit this defense. The record shows that Fern, Anderson, Donahue, Jones & Sabatt filed partnership tax returns for several years past 1981, the year the partnership allegedly dissolved, and that each partner's share of profits was calculated in the same manner in 1980, when the firm was admittedly a partnership, as it was for several years thereafter. Receipt of a share of profits in a business is itself prima facie evidence of a partnership. *See* Mass.Gen.L. ch. 108A, § 7(4). In addition to the indicia of partnership already described, the firm's internal ledgers referred to itself as a partnership, the phone at the "shared office space" was answered in the name of the firm, and defendants advertised themselves as a firm in both the phone book and the lawyer's directory *Martindale–Hubbell,* held accounts, investments and insurance in the name of the firm, and renewed their lease in the name of the firm—specifically describing themselves as a partnership.[3] Though they offer explanations for these circumstances consistent with the absence of a partnership, it was not clear error to come to the conclusion that defendants were law partners at the time the opinion letter was issued.

### B. *Authority*

Both parties urge us to overturn the findings below related to authority: defendants argue that the evidence was insufficient to support the district court's finding that there was authority to issue the letter, while plaintiff asserts that, based on the evidence, it was error for the jury to find that there was no authority. Despite the apparent incongruity of different conclusions by the jury and judge on this question, we hold that neither one is clearly erroneous. While the evidence was

---

**3.** The original lease was made in 1974, when Sabatt had not yet joined the firm, in the name of "Fern, Anderson, Donahue & Jones, a partnership consisting of Daniel J. Fern, Richard C. Anderson, Robert J. Donahue and Stephen C. Jones." When the firm renewed its lease in 1983, it did not advise the landlord that the partnership had "dissolved" or that Sabatt had been named a partner. We also note that Jones and defendants Fern, Anderson and Donahue were co-owners of certain accounts without defendant Sabatt. Thus, the renewed lease, as well as those accounts for which Sabatt was not listed as a co-owner, only bolster the finding of partnership as between Jones and defendants Fern, Anderson and Donahue. Nonetheless, the totality of other evidence is sufficient to support the finding by both the judge and jury that Sabatt was also a member of the partnership.

strong enough to *permit* a finding of apparent authority, it was not so overwhelming as to *require* one.

■ Massachusetts law recognizes apparent authority where

"conduct by the principal ... causes a third person reasonably to believe that a particular person ... has authority to enter into negotiations or to make representations as his agent." If a third person goes on to change his position in reliance on this reasonable belief, the principal is estopped from denying that the agency is authorized.

*Hudson v. Massachusetts Property Ins. Underwriting Ass'n*, 386 Mass. 450, 457, 436 N.E.2d 155, 159 (1982) (quoting W.A. Seavey, Agency § 8D, at 13 (1964)) (citations omitted); *accord Putnam v. DeRosa*, 963 F.2d 480, 484 (1st Cir.1992). Whether apparent authority exists is a question of fact. *Consolidated Rail Corp. v. Hallamore Motor Trans., Inc.*, 394 Mass. 56, 59 n. 2, 473 N.E.2d 1137, 1139 n. 2 (1985). We thus affirm unless there has been clear error. Fed.R.Civ.P. 52(a); *American Title Ins. Co.*, 16 F.3d at 453.

■ As indicated, the district judge, making findings of fact independently of the jury on the cause of action under 93A, found that Jones did have apparent authority to issue the opinion letter on behalf of the partnership, and that Kansallis changed its position in reasonable reliance on that authority. There is sufficient evidence in the record to support this conclusion. In general, defendants manifested to the world signs that could reasonably lead third parties to believe they were a law partnership, each authorized to act and speak on behalf of the firm: their shared letterhead, offices, and office support staff, their common office signs and joint listings in telephone directories and *Martindale–Hubbell.* But more specifically, defendants manifested to Kansallis a relationship with Jones that led Kansallis to believe Jones was authorized to issue the letter on behalf of the partnership: they caused their phone

to be answered in the firm's name, thus making reasonable the inference that Kansallis's lawyer's phone calls to Jones were answered in the firm's name; they allowed Jones unrestricted use of the firm stationery; and they erected no general limitations or clearance procedures for the issuance of legal opinion letters on firm stationery. By doing so, they encouraged Kansallis to believe that the firm, and not just Jones, stood behind the opinion letter. Whether they had done enough to make Kansallis's belief reasonable is a question that is "uniquely within the competence" of the fact finder. *DeVaux v. American Home Assurance Co.*, 387 Mass. 814, 819, 444 N.E.2d 355, 358 (1983). There is no clear error in the judge's decision that it was reasonable.

■ Likewise, there is no clear error in the jury's contrary conclusion. The opinion letter was not signed by any of the named partners, nor in the name of the firm, as is customarily the practice for legal opinion letters. Rather, it was signed by an individual who turned out to be an employee of Iyanough Management Co., a company of which Jones was a principal and which Jones used to facilitate the fraud. The Iyanough employee's name nowhere appeared on the law firm's letterhead. Indeed, Kansallis's New York lawyer, who dealt directly with Jones in the transaction, specifically asked him to revise language in the letter so that the crucial representations concerning the transaction were made by the collective "we"—ostensibly the firm—and not the individual "I." [4] Thus, whether the letter spoke on behalf of the firm already was an important concern to Kansallis's lawyer, and the jury was within its purview to decide that she should have obtained further assurances before concluding that it did. Under these circumstances, the jury's finding that Jones was not authorized to issue the letter on the firm's behalf was not clearly erroneous.

## C. *Whether the 93A Claim Arose Substantially and Primarily in Massachusetts*

■ Appellees assert that the district court erred in concluding that the conduct

---

4. It is only the conduct of the principal, and not the conduct of the agent, that may create apparent authority. *Sheinkopf v. Stone*, 927 F.2d 1259, 1269 (1st Cir.1991). Thus, the fact that Jones

made this change in language, which undoubtedly heightened Kansallis's belief that the firm stood behind the letter, does not help Kansallis show apparent authority.

giving rise to the 93A claim occurred primarily and substantially within Massachusetts, thus making the conduct subject to the statute under Mass.Gen.L. ch. 93A, § 11. They rely on the facts that the opinion letter was drafted by Kansallis's lawyers in New York and that a central element of the conspiracy—making fraudulent U.C.C. filings—occurred in Maine. Notwithstanding these facts, the partnership existed in Massachusetts and the crucial letter that formed the basis for the entire cause of action by linking defendants to Jones's liable conduct was executed there. Further, the fraud culminated there because Kansallis disbursed the "loan money" to Jones and others in Massachusetts. Finally, we note that § 11 provides an exemption from 93A liability, available as a defense, rather than a jurisdictional prerequisite to suit, and thus defendants bear the burden of proving a lack of primary and substantial involvement in Massachusetts. *See* ch. 93A, § 11 (last paragraph). There is no clear error here.

## II. *Legal Issues*

Kansallis's legal challenges are not so easily resolved. It argues that the district court erroneously concluded that, in a cause of action pursuant to 93A, general principles of vicarious liability[5] are inapplicable to "innocent partners," i.e., those who were entirely unaware and uninvolved with their partner's actionable conduct, even if such conduct was authorized. We have found no controlling Massachusetts precedent on this issue, which is determinative of the 93A claim. We therefore think it is appropriate to certify the question to the SJC. *See Nieves v. University of Puerto Rico*, 7 F.3d 270, 274 (1st Cir.1993) (absent controlling state law precedent, federal appeals court sitting in diversity has discretion to certify state law questions to highest state court); SJC Rule 1:03 (accepting certified questions that are claim-determinative and on which there is no SJC controlling precedent).

Kansallis raises another legal issue on which we also need guidance from the SJC.

The district court charged the jury that, in order to find defendants vicariously liable based on the theory that Jones's conduct was within the scope of the partnership, it would have to find, *inter alia*, that Jones acted, at least in part, with the intent to benefit the partnership. This seems to be the rule as articulated in *Wang Laboratories v. Business Incentives*, 398 Mass. 854, 859, 501 N.E.2d 1163, 1166 (1986). However, there is no motivation requirement in the test articulated by *New England Acceptance v. American Manufacturers Ins. Co.*, 373 Mass. 594, 597, 368 N.E.2d 1385 (1977) (adopting as its own the appeals court holding that principals may be vicariously liable for the acts of their agents "regardless of the fact that the [agents] were acting entirely for their own purposes"). In light of this apparent conflict, and since *Wang* did not directly cite to or overrule *New England Acceptance*, we also consider it wise to refer this question to the SJC.

In certifying these questions, we wish to make it clear that we would welcome any other direction from the SJC that it deems useful in resolving these issues.

### Conclusion

For these reasons, we affirm the various fact-findings by the district judge and jury and certify two questions of law to the Supreme Judicial Court of Massachusetts.

### CERTIFICATION

For the reasons discussed in our opinion in this case, *Kansallis Finance, Ltd. v. Daniel J. Fern, Richard C. Anderson, Robert J. Donahue, and Charles M. Sabatt*, Nos. 93–2381 and 94–1010, we certify the following questions to the Massachusetts Supreme Judicial Court:

1. Under Massachusetts law, to find that a certain act is within the scope of a partnership for the purpose of applying the doctrine of vicarious liability, must a plaintiff show, *inter alia*, that the act was taken at least in

---

5. *See* Mass.Gen.L. ch. 108A, § 13 ("Where, by any wrongful act or omission of any partner ... with the authority of his co-partners, loss or injury is caused to any [non-partner], or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.").

part with the intent to serve or benefit the partnership?

2. May defendants be found vicariously liable for authorized conduct by their partner that violated Mass.Gen.L. ch. 93A, even if they were entirely unaware of and uninvolved with that conduct?

In asking these questions, we would, of course, also welcome any discussion of relevant Massachusetts law the Supreme Judicial Court deems appropriate. The Clerk of the Court is to forward, under the Official Seal of this Court, the Certification, our opinion, and the briefs and appendix filed by the parties, to the Massachusetts Supreme Judicial Court.