199 N.J. Super. 70 (1984)
488 A.2d 258
ROLLINS ENVIRONMENTAL SERVICES (NJ), INC., A DELAWARE CORPORATION, PLAINTIFF,
v.
TOWNSHIP OF LOGAN, DEFENDANT.
Superior Court of New Jersey, Law Division Gloucester County.
Decided October 26, 1984.
*73 Charles L. Harp, Jr., for plaintiff (Archer & Greiner, attorneys).
Timothy S. Haley, for defendant (Gordon & Gordon, attorneys).
EDWARD S. MILLER, J.S.C.
This action presents the issue of whether a municipality is precluded by state or federal law from prohibiting the placing of polychlorinated byphenyls (PCBs) in areas of the municipality designated as environmentally sensitive.
Rollins Environmental Services, Inc. (Rollins) owns and operates a solid waste disposal facility in the Township of Logan. Rollins is currently storing PCBs at its facility and is implementing a plan to dispose of them by incineration. An application for a permit to burn PCBs is pending with the United States Environmental Protection Agency (EPA).
On December 29, 1983, Logan Township passed ordinance 5-1983, entitled "Ordinance Prohibiting the Location of Polychlorinated Biphenyls in Environmentally Sensitive Areas in the Township of Logan, County of Gloucester, State of New Jersey." Section 2.1 of the ordinance provides: "No person shall locate PCBs in any environmentally sensitive area of Logan Township...." The term "locate" is defined in section 1.2 to mean "place, store, site, situate on a temporary, recurrent, or repeated basis for purposes of storage and/or accumulation and/or disposal." The portion of the Rollins facility currently used to store PCBs and those portions Rollins intends to use to *74 dispose of the PCBs are within areas designated by the ordinance as environmentally sensitive.
Rollins brought an action in lieu of prerogative writs on February 14, 1984 seeking to have ordinance 5-1983 declared invalid. Its complaint includes four counts which allege that: the ordinance is preempted by state law (count one); application of the ordinance to the Rollins facility would constitute an arbitrary, capricious and unconstitutional exercise of the police power (count two); the ordinance is preempted by federal law (count three); and the ordinance unduly and unconstitutionally burdens interstate commerce (count four).
Logan Township filed a motion to dismiss or in the alternative for summary judgment as to counts one, three and four. Rollins filed a cross-motion for summary judgment on count three, declaring that the ordinance is preempted by federal law or in the alternative on count one, declaring that the ordinance is preempted by state law.
It is necessary to first address the issue of whether ordinance 5-1983 is preempted by federal law. The relevant statute is the Toxic Substances Control Act. 15 U.S.C.A. § 2601 et seq. (TOSCA). Initially, it should be noted that since the power of Congress to regulate toxic substances under TOSCA is derived from the Commerce Clause, Art. I, § 8 cl. 3 of the United States Constitution, counts three and four of the Rollins complaint raise the same argument. See 15 U.S.C.A. § 2601(a)(3). Accordingly, the Court will dispose of counts three and four together.
The two sections of TOSCA pertinent to the issue of federal preemption involved here are sections 2605 and 2617. Section 2605 concerns the regulation of hazardous chemical substances and mixtures. The regulation of PCBs is specifically covered in subsection (e). 15 U.S.C.A. § 2605(e). Section 2617 directly addresses the issue of preemption of local regulation.
*75 The question of federal preemption when the EPA promulgates regulations pursuant to section 2605 is specifically addressed by section 2617(a)(2)(B) which provides that:
(B) if the Administrator prescribes a rule or order under section 2604 or 2605 of this title (other than a rule imposing a requirement described in subsection (a)(6) of section 2605 of this title) which is applicable to a chemical substance or mixture, no State or political subdivision of a State may, after the effective date of such requirement, establish or continue in effect, any requirement which is applicable to such substance or mixture, or an article containing such substance or mixture, and which is designed to protect against such risk unless such requirement (i) is identical to the requirement prescribed by the Administrator, (ii) is adopted under the authority of the Clean Air Act or any other Federal law, or (iii) prohibits the use of such substance or mixture in such State or political subdivision (other than its use in the manufacture or processing of other substances or mixtures). [15 U.S.C.A. § 2617(a)(2)(B).]
The analysis under this section appears to be relatively simple because any EPA regulations pertaining to PCBs are promulgated pursuant to section 2605(e). Thus, looking at section 2617(a)(2)(B) it would appear that the Logan Township ordinance is preempted by TOSCA unless it fits into one of the three exceptions outlined in section 2617(a)(2)(B). The analysis, however, is complicated by the parenthetical reference in that section  "other than a rule imposing a requirement described in (a)(6) of Section 2605 of this title."
Section 2605(a)(6) deals with regulations concerning the disposal of hazardous substances and mixtures. This section states that any EPA regulation pertaining to disposal "may not require any person to take any action which would be in violation of any law or requirement of, or in effect for, a State or political subdivision...." 15 U.S.C.A. § 2605(a)(6)(B). Under EPA regulations the term "disposal" is defined as "intentionally or accidentally to discard, throw away or otherwise complete or terminate the useful life of PCBs or PCB items. Disposal includes spills, leaks, and other uncontrolled discharges of PCBs as well as actions related to containing, transporting, destroying, degrading, decontaminating, or confining PCBs and PCB items." 40 C.F.R. § 761.3(h) (1983); emphasis *76 added. It is evident that the Logan Township ordinance fits into this section and is not preempted by federal law.
Our Supreme Court has held that the interpretation of a regulatory statute by the administrative agency responsible for the enforcement of that statute is "entitled to great weight and is a substantial factor to be considered in construing the statute." Exxon Corp. v. Hunt, 97 N.J. 526, 541 (1984) (quoting New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 575 (1978)); Garden State Farms, Inc. v. Mayor Louis Bay, II, 77 N.J. 439, 449 (1978). Thus, it is extremely relevant that this Court's holding that the ordinance is not preempted by federal law is supported by the policy of the EPA. The EPA's position is that section 2617(a)(2)(B) is limited by the reference to section 2605(a)(6). Consequently, according to the EPA, there can be no federal preemption of local disposal requirements. See SED, Inc. v. City of Dayton, 519 F. Supp. 979, 986 (S.D.Ohio 1981) (citing EPA, PCB Marking and Disposal Regulations, Final Action  Support Document 39-42 (circa 1978)).
EPA's policy was first set forth in the preamble to the disposal and marking rule on PCBs in 1978. This preamble states:
EPA has determined that under TSCA, state requirements regarding disposal of PCB's are completely exempt from federal preemption insofar as they prescribe what may be done within the State, but that a State may not require PCB's generated within its boundaries to be disposed of in a method less restrictive than prescribed by these rules. [43 Fed.Reg. at 7153-54, quoted id. at 986.]
A year later, the EPA again had the opportunity to address the issue of preemption when it published the 1979 PCB ban rules. Although at the time the EPA expressed concern that state and local governments could frustrate national hazardous waste policy by prohibiting disposal of PCBs and other substances, the EPA "decided not to make any changes in its preemption policy...." 44 Fed.Reg. at 31528, quoted id. at 985. There is no indication since then that the EPA has changed this policy. As a result, the court's finding *77 that ordinance 5-1983 is not preempted by federal law is fully supported by the EPA's policy.
Both plaintiff and defendant have brought conflicting federal district court opinions on this issue to the court's attention. See Chappell v. SCA Services, 540 F. Supp. 1087 (C.D.Ill. 1982) (dicta adheres to EPA policy that local disposal requirements are not preempted by TOSCA); Warren County v. State of North Carolina, 528 F. Supp. 276 (E.D.N.C. 1981) (total county wide disposal ban of PCBs struck down as obstacle to objectives of TOSCA); SED, Inc. supra, (local PCB regulations adopted under authority of Clean Water Act not preempted by federal law because of second exception to preemption in section 2617(a)(2)(B) of TOSCA). The fact that there are federal decisions going both ways on this issue only serves to illustrate the complex nature of the issue involved. These conflicting decisions, however, are not binding authority on this court.
Federal preemption of state law is not favored and courts are required to harmonize federal and state law whenever possible. Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 317, 101 S.Ct. 1124, 1129, 67 L.Ed.2d 258, 264-65 (1981); Florida Lime & Avocado Growers, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248, 257 (1963); Exxon Corp. v. Hunt, 97 N.J. 526, 533 (1984). That process requires a court to look beyond the statutory language and to consider "the relationship between state and federal law as they are interpreted and applied." Exxon Corp. v. Hunt, supra, 97 N.J. 526, 534 (quoting Jones v. Rath Packing Co., 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604, 614 (1977)). This case is one of first impression in New Jersey and as such this court is free to adopt the EPA's interpretation and application of the federal law in question that local disposal requirements of PCBs are not preempted. In so holding the Court has not placed any barriers to the application of TOSCA not already contemplated by the statute and the EPA.
*78 The second issue raised in this action is whether the Logan Township ordinance is preempted by state law. Plaintiff argues that through passage of the Solid Waste Management Act, N.J.S.A. 13:1E-1 et seq., the Major Hazardous Waste Facilities Siting Act, N.J.S.A. 13:1E-49 et seq., the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq. and the promulgation of regulations thereunder the State has created a comprehensive system for dealing with hazardous waste which preempts regulation by municipalities. In making this argument Rollins relies on cases which have held that local regulation in the area of solid waste storage and disposal is preempted by the Solid Waste Management Act, N.J.S.A. 13:1E-1 et seq. See Southern Ocean Landfill v. Mayor and Council of the Township of Ocean, 64 N.J. 190 (1974); Ringlieb v. Parsippany-Troy Hills Township, 59 N.J. 348 (1971); Chester Township v. Department of Environmental Protection, 181 N.J. Super. 445 (App.Div. 1981); Little Falls Township v. Bardin, 173 N.J. Super. 397 (App.Div. 1979). Plaintiff argues that state preemption of waste disposal has carried over into the field of hazardous waste.
While plaintiff's argument is not without merit, this court is reluctant to find it persuasive. The Legislature has given municipalities in this State broad powers to protect the health, safety and welfare of their inhabitants. See N.J.S.A. 40:48-1, -2. In addition, a liberal construction of local authority is mandated by Art. IV, § 7, par. 11 of the New Jersey Constitution. United Building and Construction Trades Council v. Camden, 88 N.J. 317, 344 (1982); Inganamort v. Borough of Fort Lee, 62 N.J. 521, 536 (1973). While there is no question that the State can override local authority, the court finds that in the area of the regulation of PCBs the State has not done so. It is significant that unlike the federal law discussed above neither the state statutes nor the regulations promulgated thereunder relied upon by plaintiff discuss the question of preemption. Our Supreme Court has consistently stated that the intent by the State to preempt local authority must be clear. *79 United Building and Trades Council, supra, 88 N.J. at 344; Dome Realty, Inc. v. Paterson, 83 N.J. 212, 230 (1980); Summer v. Teaneck, 53 N.J. 548, 554 (1969).
This case is made more difficult by the obfuscation created by the turgid use of bureaucratic language. Surely, if any agency or statutory draftsman really intended to preempt, he could have done so by stating the rule in plain simple language, e.g., no state or political subdivision shall pass any regulation contrary to the provision of this order or words to that effect.
Our Legislature has made its intent clear that this be done by its enactment of the Plain Language Act, N.J.S.A. 56:12-1 et seq. It is indeed frustrating to see the legal profession impeded by the necessity to discard language which has withstood the test of time and judicial construction for decades while bureaucrats, both in and out of government, grind out volumes of convoluted obfuscation. A governing body ought not be required to obtain the services of a doctor of science in order to understand the parameters of its authority.
When any of the government entities entitled to do so makes its intent clear to preempt, this court will comply and strike down the ordinance. Until such intent be clear, it will sustain the ordinance.
Perhaps an even more persuasive factor than the total lack of language on the part of the State preempting local ordinances can be seen by an analysis of the Logan Township ordinance itself. It is extremely significant that this ordinance does not attempt to place a total ban on the placement of PCBs in the township. Instead, the ordinance only prohibits the storage of PCBs in certain, well-defined environmentally sensitive areas. A closer examination of the ordinance reveals that it establishes fourteen different categories of environmentally sensitive areas. Six of the categories are areas with special designations pursuant to a state or federal law. For example, areas designated as riverine flood hazard areas pursuant to the Flood Hazard Area Control Act, N.J.S.A. 58:16A-50 et seq., areas *80 designated as wild, scenic, recreational or developed recreational areas pursuant to the National Wild and Scenic Rivers Act, 16 U.S.C.A. § 1271, et seq. or the New Jersey Wild and Scenic Rivers Act, N.J.S.A. 13:8-45 et seq. and areas where PCBs would adversely affect the habitat of endangered species as defined by the New Jersey Endangered and Nongame Species Conservation Act, N.J.S.A. 23:2A-1 et seq. or the Federal Endangered Species Act of 1973, P.L. 93-205 are all defined as environmentally sensitive by the Logan Township ordinance. In addition, eleven of the fourteen categories are areas involving either surface or ground water.
The hazardous waste problem has become one of the most critical environmental issues in the United States. See United States v. Price, 523 F. Supp. 1055, 1057 (D.N.J. 1981), aff'd 688 F.2d 204 (3rd Cir.1982); English, "Hazardous Waste Regulation: A Prescription for Clean Water," 13 Seton Hall L.J. 229 (1983). The problem is particularly severe in New Jersey because the State generates the most hazardous waste in the country. Office of Water and Waste Management, U.S. Environmental Protection Agency, Everybody's Problem: Hazardous Waste (1980) 14; English, supra at 230. New Jersey residents are all too familiar with the consequences of this hazardous waste crisis. The contamination of the Raritan River from the Kin-Buc landfill in Edison, the forced closing of private wells in Jackson Township because of hazardous waste contamination, the endangering of Atlantic City's principal source of drinking water from Price's Pit, and the contamination of the Manasquan River and two underground aquifiers by leakage from the Lone Pine landfill in Freehold Township are just portents of potential future calamities facing New Jersey. See United States v. Price, supra; Hazardous Waste Advisory Comm'n, Report to Governor Brendan Byrne (1980) 5-6; Division of Epidemiology & Disease Control, N.J. Dep't of Health, Groundwater Contamination and Possible Health Effects in Jackson Township, NJ (1980).
*81 These examples serve to highlight to the court the type of concerns underlying Logan Township's ordinance. By seeking to protect environmentally sensitive areas from the dangers of possible PCB contamination, Logan Township is attempting to avoid having its name added to the list of New Jersey's hazardous waste disasters. There is nothing in the ordinance which precludes Rollins or any other company from storing or disposing of PCBs in areas of the township that would not threaten the environment. This limitation on the scope of the ordinance convinces the court that the ordinance does not stand as an obstacle to state statutes and regulations addressing the problems of hazardous waste. See Garden State Farms, Inc. v. Mayor Louis Bay, II, supra; Overlook Terrace Management Corp. v. Rent Control Bd. of West New York, 71 N.J. 451, 462 (1976).
In conclusion, the court holds that ordinance 5-1983 of the Township of Logan, prohibiting the placing of PCBs in environmentally sensitive areas of the township is valid. Defendant's motion for summary judgment as to counts one, three and four is granted. Counsel for defendant is directed to submit an appropriate order.