216 N.J. Super. 347 (1986)
523 A.2d 712
CLAIRE E. DEWEY, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF WILFRED E. DEWEY, DECEASED, PLAINTIFF,
v.
R.J. REYNOLDS TOBACCO CO., R.J. REYNOLDS INDUSTRIES, INC., AMERICAN BRANDS, INC., AND BROWN & WILLIAMSON TOBACCO CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division Bergen County.
Decided December 22, 1986.
*349 Cynthia A. Walters for plaintiff (Budd, Larner, Gross, Picillo, Rosenbaum, Greenberg & Sade, attorneys; Alan M. Darnell of counsel; Cynthia A. Walters and Marc Z. Edell on the brief).
Martin London, admitted pro hac vice, for defendant Brown & Williamson Tobacco Corporation (Paul, Weiss, Rifkind, Wharton & Garrison, attorneys; Martin Flumenbaum of counsel). William C. Slattery for defendant (Norris, McLaughlin & Marcus, attorneys).
LUCCHI, J.S.C.
This matter comes before the court on a motion for summary judgment brought by defendant Brown & Williamson Tobacco Corporation (Brown & Williamson). The issue raised by Brown & Williamson is whether the federal Cigarette Labeling and Advertising Act, 15 U.S.C.A. §§ 1331-1340 (1982) (the act), preempts the state common law and statutory claims brought by plaintiff Claire E. Dewey in this court. The first count of *350 the complaint alleges, in pertinent part, the failure of defendants, R.J. Reynolds Tobacco Co., R.J. Reynolds Industries, Inc., American Brands, Inc., and Brown & Williamson, to adequately warn of the hazardous nature of the cigarettes that they manufactured and sold. The second count of the complaint challenges the propriety of defendants' advertising and promotion of cigarettes. Brown & Williamson moves for summary judgment based upon the recent Third Circuit decision in Cipollone v. Liggett Group, Inc., 789 F.2d 181 (3 Cir.1986), which held that the act preempts state law damage actions relating to smoking and health that challenge either the adequacy of the federally-mandated warning on cigarette packages or the propriety of a party's efforts respecting its promotion and advertising of cigarettes.
This motion presents questions of first impression in this State: first, whether this court is bound by the Third Circuit's interpretation of the federal Cigarette Labeling and Advertising Act and, second, whether plaintiff's claims under state law are preempted by the act.

I.

A. Factual and Procedural Background.

In her complaint and in papers submitted by her attorneys, Claire Dewey alleges that her husband, Wilfred, developed lung cancer as a result of smoking defendants' cigarette products from 1942 until 1980. Mr. Dewey died of lung cancer in November 1980. On August 20, 1982, Mrs. Dewey commenced this action as executrix of her husband's estate. An amended complaint was filed on October 19, 1982, and on June 28, 1983, Mrs. Dewey filed a second amended complaint that is the subject of this motion.
In 1966, Congress enacted the Federal Cigarette Labeling and Advertising Act which required imposition of the following warning label on cigarette packages: "Caution: Cigarette Smoking May Be Hazardous to Your Health." 15 U.S.C.A. *351 § 1333 (1970). It is undisputed that Mr. Dewey continued to smoke after this warning label appeared. From 1977 until 1980, Mr. Dewey smoked Viceroy-brand cigarettes, a Brown & Williamson product. At her deposition, Mrs. Dewey indicated that her husband was aware of the alleged dangers of cigarette smoking and the federally-mandated warning on cigarette packages.
The second amended complaint contains four counts. The first count alleges that defendants are strictly liable for the manufacture of cigarette products "which were not reasonably fit, safe and suitable for human use at the time the products were placed in the stream of commerce." The first count further alleges that defendants "failed to warn the general public and/or Plaintiff's decedent of [the] deleterious, toxic, and hazardous nature of their products for numerous years. In recent years, minimal warnings conveyed by the Defendants ... were completely inadequate." The second count alleges fraud and misrepresentation through defendants' commercial advertising and marketing of their products. The third and fourth counts are derivative in nature. The third count alleges a cause of action pursuant to New Jersey's Wrongful Death Statute, N.J.S.A. 2A:31-1 et seq. The fourth count contains Mrs. Dewey's claim for loss of consortium resulting from her husband's death.
In answer to the complaint, Brown & Williamson pleaded that all of plaintiff's claims are preempted by the Federal Cigarette Labeling and Advertising Act and that the complaint failed to state a cause of action. Brown & Williamson moves to dismiss the complaint based upon the "preemption defense," i.e., that Wilfred Dewey began smoking this defendant's Viceroy product after the appearance of the federal warnings on cigarette packages in 1966.

B. The Cipollone Decision.

In Cipollone, the Third Circuit became the first federal appellate court to determine whether the act preempts state *352 common law damage claims. Plaintiffs in Cipollone, like Mrs. Dewey, alleged that a spouse's death was caused by defendant cigarette companies' marketing of an unsafe and defective product and that defendants failed to warn of the hazards of cigarette smoking. 789 F.2d at 184. The Cipollone defendants contended that those claims were preempted by the act. The district court held that none of plaintiff's claims were expressly or impliedly preempted by the act and therefore granted plaintiff's motion to strike the preemption defense. 593 F. Supp. 1146 (D.N.J. 1984) (Sarokin, J.)
The question was then certified for appeal to the Third Circuit. In reversing the district court, the Third Circuit relied upon principles of implied preemption to determine that Congress, in enacting a comprehensive scheme regulating cigarette labeling and advertising relative to smoking and health, "intended to occupy a field" in order to avoid diverse, non-uniform state regulations. 789 F.2d at 186 (citing Cipollone, 593 F. Supp. at 1164). The Third Circuit specified, however, that it was adopting a "restrained view" in evaluating whether Congress intended to entirely supercede state tort law claims such as those presented here, recognizing the overriding presumption against the preemption of state law by Congress. Id. at 185-186. The court held, therefore, that only those state law claims in conflict with the act's dual objectives of warning the public of the hazards of cigarette smoking and protecting national economic interests through a uniform cigarette labeling regulation would be preempted.
The court identified three types of state law damage claims ripe for preemption: those which predicate liability upon the adequacy of the warning labels imprinted on cigarette packages, those which challenge the propriety of a manufacturer's promotion or advertising of its cigarette products, and those claims whose success "necessarily depends on the assertion that a party bore the duty to provide a warning to consumers in addition to the warning Congress has required on cigarette packages." Id. at 187. The Third Circuit declined to rule on *353 the merits of the Cipollone's claims and thus remanded the case to the district court to determine which claims would be subject to preemption.
Before turning to the merits of the within motion, this court must determine the extent to which it is bound by the Cipollone decision. In Cipollone, the Third Circuit was called upon to construe a federal statute, the Cigarette Labeling and Advertising Act. New Jersey courts have long adhered to the principle that when confronted with the interpretation and application of a federal statute, federal decisional law is binding upon the state court. Southern Pacific Co. v. Wheaton Brass Works, 5 N.J. 594 (1950), cert. den. 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed.2d 1343 (1951); Urban League of Greater New Brunswick v. Borough of Carteret, 170 N.J. Super. 461 (App.Div. 1979), rev'd on other grounds 92 N.J. 158 (1983); Penbrook Hauling Co. v. Sovereign Construction Co., 128 N.J. Super. 179 (Law Div. 1974); aff'd 136 N.J. Super. 395 (App.Div. 1975).
This principle is of particular significance here in the novel context of a products liability action against a cigarette manufacturer. We note that there is a conflict among federal district courts around the country in interpreting the preemptive effect of the act on state law damage actions, some of whom have declined to follow the Third Circuit's decision in Cipollone.[1] There is authority in New Jersey to the effect that a state court, when confronted with the interpretation of a federal statute, is not bound by federal decisional law where there are conflicting opinions in the district courts. See Rollins Environmental Services v. Logan Twp., 199 N.J. Super. 70 *354 (Law Div. 1984), rev'd on other grounds, 209 N.J. Super. 556 (App.Div. 1986) (interpreting the federal Toxic Substances Control Act, 15 U.S.C.A. § 2601 et seq.). That is not the situation here, however. There is no conflict among the federal circuit courts on the preemption issue since Cipollone is the sole federal appellate decision and the highest judicial authority to date to have construed the act with respect to common law tort claims. For these reasons, we consider ourselves bound by the Third Circuit's construction of the act.

II.
In considering Brown & Williamson's motion for summary judgment, we accept, as we must, all the evidence supporting plaintiff's position and accord her the benefit of all inferences reasonably and legitimately deducible therefrom. Dolson v. Anastasia, 55 N.J. 2, 5 (1969). Further, since the Third Circuit did not specify which common law claims were subject to preemption in Cipollone, we must evaluate each of plaintiff's claims here in view of the Third Circuit's reasoning to determine which are in actual conflict with the act.
Plaintiff claims that defendant tobacco manufacturers are strictly liable in tort because their cigarette products are unavoidably unsafe and that the risks attendant to their use outweighs their utility. Plaintiff further claims that even if cigarettes pass muster under the "risk-utility" standard, they are nonetheless defective because defendants could have designed them more safely, or, in the alternative, defendants did not adequately warn of their dangers. Construing her pleadings and the evidence presented on this motion to dismiss in the light most favorable to her, we determine that plaintiff, in the first count of her complaint, sufficiently alleges alternative strict liability theories of defect based upon improper design and failure to warn. See Dolson, 55 N.J. at 5; R. 4:5-6, -7.
Based upon the conclusion that this court is bound by the Third Circuit's decision in Cipollone, we hold that insofar *355 as the first count of the complaint asserts that Brown & Williamson is strictly liable for its failure to warn and/or adequately convey a warning to plaintiff's decedent of the hazards of cigarette smoking, subsequent to the effective date of the federal Cigarette Labeling and Advertising Act, this claim actually conflicts with the act and is therefore preempted by federal law. The success of a strict liability claim premised on defective warning "necessarily depends on the assertion that [defendant] bore the duty to provide a warning to consumers in addition to the warning Congress has required on cigarette packages" and necessarily challenges the adequacy of the federally-mandated warning. 789 F.2d at 187. The Third Circuit specifically ruled that this type of claim conflicts with the congressional purpose of warning the public of the dangers of cigarette smoking. We therefore dismiss that portion of the first count alleging defendant's failure to warn or provide adequate warning on the grounds of preemption.
For similar reasons, we hold that the second count of the complaint must also be dismissed. The second count predicates liability on fraud and misrepresentation in defendant's advertising and promotion of its cigarette products. Cipollone determined that such a claim "challenges ... the propriety of a party's action with respect to the advertising and promotion of cigarettes" since liability would be imposed on a tobacco manufacturer regardless of the manufacturer's compliance with the act's labeling and advertising regulations. As such, the second count, whether we view it as stating a claim for common law fraud or statutory fraud under New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., conflicts with the act's purposes and is therefore preempted. See 789 F.2d at 187.
On the other hand, our analysis of Cipollone does not compel the same conclusion with respect to plaintiff's claim predicating strict liability based upon defective design without reference to the adequacy of the warning on cigarette packages. In the first count, plaintiff alleges a general strict liability claim against the defendant, i.e., that defendant's cigarette *356 products are defective, that the defect existed when the products were placed into the stream of commerce, and the defect proximately caused injury to a reasonably foreseeable user. O'Brien v. Muskin Corp., 94 N.J. 169, 179 (1983). In her amended answers to interrogatories, plaintiff specified that, in addition to the allegation of defect due to inadequate warning, defect was also premised upon improper design and under a risk-utility analysis. We do not believe that the act, as construed by the Third Circuit, intended to preempt this kind of strict liability claim. Indeed, Cipollone made clear that the regulatory scheme of the act and the federal interest involved was not so pervasive as to preclude all tort remedies which a plaintiff in smoking and health-related litigation may have under state law. 789 F.2d at 186.
"Defects," for purposes of a strict liability case, are generally classified as either manufacturing defects or design defects, with a failure-to-warn claim representing a particular type of design defect. O'Brien, supra, 94 N.J. at 180-181; See Freund v. Cellofilm Properties, Inc., 87 N.J. 229, 242 (1981). Plaintiff's alternative theory for the imposition of strict liability based upon design defect does not necessarily assert that a tobacco manufacturer, having fulfilled its obligations under the act, bears an additional duty to warn. A design defect claim would not have the effect of frustrating Congress' objective in enacting the federal statute and does not conflict with the act's two-fold purpose of providing warning to the public and protecting national economic interests. For these reasons we hold that plaintiff's claim of design defect based upon factors other than inadequate warning is not preempted by the act.
The touchstone of a strict liability claim in a products case is the legal standard used to evaluate the alleged defect. O'Brien, supra, 94 N.J. at 180. In a design defect case, one standard used in proving the existence of a defect requires a comparison of the utility of the product together with the risk of harm that the product poses to the public (the so-called "risk-utility analysis"). Our Supreme Court in Cepeda v. Cumberland *357 Engineering Corp., 76 N.J. 152 (1978) set forth certain factors relevant to this evaluation of a product.[2] In O'Brien, the Supreme Court endorsed the use of risk-utility analysis since it "provides the flexibility necessary for an appropriate adjustment of the interests of manufacturers, consumers and the public." 94 N.J. at 183. Moreover, the O'Brien court made clear that in a design-defect case containing a claim that a product is unavoidably unsafe, manufacturers cannot insulate themselves from liability merely by placing warnings on their products. The majority in O'Brien therefore concluded that the determination of the existence of a defect is a function of the judicial, rather than the commercial, system through the risk-utility analysis. Id. at 186. Indeed, plaintiff contends here that cigarettes are an unavoidably dangerous product, irrespective of warnings, for which no safe alternative exists. We conclude that risk-utility analysis is the proper standard for evaluating plaintiff's claim that cigarettes are a defective product.
At this juncture of the litigation, we cannot say that the minds of reasonable men could not differ on whether the risks *358 posed by cigarettes outweigh their utility. We believe therefore that plaintiff should be accorded the opportunity to carry her burden of producing sufficient evidence on the risk-utility factors to establish whether cigarettes are a defective product. In pursuing her claim for design defect, plaintiff need not prove the existence of alternative, safer designs since a jury may conclude that the risks posed by cigarette use outweighs their utility. See id. at 184-185. Plaintiff will be entitled to offer, as part of the risk-utility analysis, proof of the "state-of-the-art" respecting cigarette manufacture (i.e., that defendant had the technological expertise to minimize the unavoidable dangers attendant to cigarette smoking). Id. at 182-183.
We therefore deny defendant's summary judgment motion insofar as it challenges plaintiff's claim of defect based upon improper design and under the risk-utility analysis. Since we are allowing this claim to stand, we need not rule on the derivative claims pleaded in the third (wrongful death) and fourth (loss of consortium) counts and hence, summary judgment as to those counts is also denied.
NOTES
[1] See Roysdon v. R.J. Reynolds Tobacco, 623 F. Supp. 1189 (E.D.Tenn. 1985), appeal docketed No. 86-5072 (6 Cir. Jan. 14, 1986) (holding that claims based on adequacy of warning label preempted by the act); Palmer v. Liggett Group, Inc., 633 F. Supp. 1171 (D.Mass. 1986), interlocutory appeal certified No. 86-1525 (1 Cir. June 4, 1986) (holding that the act does not preempt common law claims based on inadequate warning); Stephen v. American Brands, Inc., No. 86-4004-RV (N.D.Fla. Aug. 7, 1986) (holding that the act preempts certain tort law claims).
[2] "(1) The usefulness and desirability of the product  its utility to the user and to the public as a whole.

(2) The safety aspects of the product  the likelihood that it will cause injury, and the probable seriousness of the injury.
(3) The availability of a substitute product which would meet the same need and not be as unsafe.
(4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
(5) The user's ability to avoid danger by the exercise of care in the use of the product.
(6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.
(7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance." [76 N.J. at 174].