225 N.J. Super. 375 (1988)
542 A.2d 919
CLAIRE E. DEWEY, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF WILFRED E. DEWEY, DECEASED, PLAINTIFF-APPELLANT,
v.
BROWN & WILLIAMSON TOBACCO CORPORATION, DEFENDANT-RESPONDENT, AND R.J. REYNOLDS TOBACCO COMPANY, R.J. REYNOLDS INDUSTRIES, INC., AND AMERICAN BRANDS, INC. (FORMERLY THE AMERICAN TOBACCO COMPANY, INC.), DEFENDANTS.
CLAIRE E. DEWEY, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF WILFRED E. DEWEY, DECEASED, PLAINTIFF-RESPONDENT,
v.
BROWN & WILLIAMSON TOBACCO CORPORATION, DEFENDANT-APPELLANT, AND R.J. REYNOLDS TOBACCO COMPANY, R.J. REYNOLDS INDUSTRIES, INC., AND AMERICAN BRANDS, INC. (FORMERLY THE AMERICAN TOBACCO COMPANY, INC.), DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 29, 1988.
Decided May 23, 1988.
*376 Before Judges PETRELLA, BAIME and ASHBEY.
Marc Z. Edell argued the cause for plaintiff-appellant and respondent Claire E. Dewey (Budd, Larner, Gross, Picillo, Rosenbaum, Greenberg & Sade, attorneys; Alan M. Darnell (Wilentz, Goldman & Spitzer) of counsel; Marc Z. Edell and Cynthia A. Walters, on the brief).
Martin London, New York counsel, admitted pro hac vice, argued the cause for defendant-respondent and appellant *377 Brown & Williamson Tobacco Corporation (Norris, McLaughlin & Marcus, attorneys; William C. Slattery, on the brief).
The opinion of the court was delivered by ASHBEY, J.A.D.
In this cigarette product liability action, plaintiff sought damages from defendant cigarette manufacturer, Brown & Williamson Tobacco Corporation, for the death of her husband. Judge Lucchi granted defendant's motion for partial summary judgment, dismissing that count of plaintiff's complaint which asserted liability based upon defendant's failure to warn of the dangers of smoking its product, Viceroy cigarettes, but denied the balance of defendant's motion. By leave granted, the parties separately appealed from these rulings. For purposes of this opinion we consolidate these appeals and affirm, substantially for the reasons expressed by Judge Lucchi in his written opinion, reported at 216 N.J. Super. 347 (Law Div. 1986), and subject to such modifications as intervening law makes necessary.[1]
We are first satisfied, as was Judge Lucchi, that plaintiff's cause of action for failure to warn is preempted by the 1965 Cigarette Labeling and Advertising Act, 15 U.S.C.A. sec. 1331 et seq. (Labeling Act) (216 N.J. Super. at 350). We recognize that Judge Lucchi's ruling was grounded in his conviction that he was bound by the federal courts in their interpretation of federal statutes, particularly by the opinion of the Third Circuit in Cipollone v. Liggett Group, Inc., 789 F.2d 181, *378 185-188 (3 Cir.1986), cert. den. ___ U.S. ___, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987) (216 N.J. Super. at 351-352).
We need not rule, however, on whether Judge Lucchi was bound by the Third Circuit opinion.[2] Our independent review convinces us that the Labeling Act does preempt plaintiff's common law action for failure to warn. 15 U.S.C.A. sec. 1334. See Feldman v. Lederle Laboratories, 97 N.J. 429, 460 (1984); Andre v. Union Tank Car Co., Inc., 213 N.J. Super. 51, 65 (Law Div. 1985), aff'd 216 N.J. Super. 219 (App.Div. 1987).
Any preemption analysis begins with examining whether the preemption is "express." "Express preemption" is defined as created by Congress's declaration to preclude state regulation in the given area, and "implied preemption" occurs when Congress, "through the structure or objectives of federal law, has impliedly precluded state regulation in the area." L. Tribe, American Constitutional Law, sec. 6-25 at 481 n. 14 (2d ed. 1988).
Because all of the cases construing the preemptive effect of the Act have concluded that what is involved is "implied preemption", we consider Professor Tribe's further words apposite.
These ... categories of preemption are anything but analytically air-tight. For example, even when Congress declares its preemptive intent in express language, *379 deciding exactly what it meant to preempt often resembles an exercise in implied preemptive analysis. [Ibid.]
The specific preemptive language is:
(a) No statement relating to smoking and health, other than the statement required by [the Act], shall be required on any cigarette package.
(b) No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter. [15 U.S.C.A. sec. 1334].
Admittedly, section 1334 does not expressly prohibit state tort actions which are predicated on asserting that the cigarette manufacturer's required warning on the package is inadequate. In construing the congressional meaning, we look to the nature of the subject. Tort claims are an area traditionally reserved to the states. We acknowledge the presumption against preemption. The United States Supreme Court has repeatedly emphasized that, "`the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" Puerto Rico Dep't of Consumer Affairs v. Isla Petroleum Corp., ___ U.S. ___, ___, 108 S.Ct. 1350, 99 L.Ed.2d 582, (1988), quoting Hillsborough County v. Automated Medical Laboratories, Inc., 471 U.S. 707, 715, 105 S.Ct. 2371, 2376, 85 L.Ed.2d 714 (1985).
On the other hand, although the extent of the preemption in the Act requires statutory construction, the fact of preemption is express. Not only does the Act say that no "State law" may require a different cigarette warning, it also says that one object of the Act is to prevent "diverse, nonuniform, and confusing cigarette labeling and advertising regulations," 15 U.S.C.A. sec. 1331. Our task, therefore, is to construe this specific preemptive language and to give effect to the Congressional intent there expressed. Cf. California Federal Sav. & Loan Ass'n. v. Guerra, 479 U.S. 272, ___, 107 S.Ct. 683, 697, 93 L.Ed.2d 613, 632-633 (1987) (Scalia, J., concurring). Is the term *380 "State law" in the Act intended to be limited to state statutes or state regulations? We think not.[3]
Substantial federal authority construing the preemption provisions accords with Cipollone and is persuasive on this point. See Palmer v. Liggett Group, Inc., 825 F.2d 620 (1 Cir.1987); Stephen v. American Brands, Inc., 825 F.2d 312 (11 Cir.1987); Gunsalus v. Celotex Corp., 674 F. Supp. 1149, 1159 (E.D.Pa. 1987). Much of the analysis focuses on the Congressional scheme, implying preemption because the objectives of the federal law are so clear that a contrary result would present an obstacle to their attainment, a principle of ascertaining implied preemptive congressional intent. As the Palmer court said,
It is these policies [health protection and trade protection], and more importantly, the balance fixed between them that is our focus. The language of sec. 1331 even measures the relative weight of the policies: the federal warning should protect commerce "to the maximum extent" consistent with its health policy. Thus, we consider now the effect of the introduction of a state tort claim into this congressionally calibrated system. As discussed earlier, Congress ran a hard-fought, bitterly partisan battle in striking the compromise that became the Act. It is inconceivable that Congress intended to have that carefully wrought balance of national interests superseded by the views of a single state, indeed, perhaps of a single jury in a single state. Contrary to the District Court's view, we therefore hold that a suit for damages on a common law theory of inadequate warning  if the warning given complies with the Act  disrupts excessively the balance of purpose set by Congress, and is thus preempted. [Palmer v. Liggett Group, Inc., supra, 825 F.2d at 626].
Respecting the specific preemption language, we are also satisfied that upholding plaintiff's challenge to the federally mandated warning is necessarily in conflict with the Act's express terms. Either the federally prescribed warning is adequate under our law or it is not. As the Palmer court further said,
... Once a jury has found a [federally mandated] label inadequate under state law, and the manufacturer liable for damages for negligently employing it, it is unthinkable that any manufacturer would not immediately take steps to minimize *381 its exposure to continued liability. The most obvious change it can take, of course, is to change its label. Effecting such a change in the manufacturer's behavior and imposing such additional warning requirements is the very action preempted by sec. 1334 of the Act. Indeed, it arrogates to a single jury the regulatory power explicitly denied to all fifty states' legislative bodies. [Palmer v. Liggett Group, Inc., supra, 825 F.2d at 627-628].
We agree. It is clear to us that the preservation of plaintiff's failure to warn claim is necessarily in conflict with the Act's express limitations on conflicting state law and with the Congressional purpose of preventing diversity in the cigarette labeling requirements of the several states.[4]
Although we also agree with Judge Lucchi that plaintiff's submissions were otherwise sufficient to withstand defendant's summary judgment motion, we consider more discussion necessary concerning the viability of plaintiff's remaining cause of action. In support of its contention that plaintiff had no remaining cause of action, defendant first urged that it was entitled to summary judgment because the Labeling Act precluded any theory of liability, in addition to precluding one based upon a failure to warn. Judge Lucchi reasoned that a manufacturer's strict liability for product defect consequences can take one of three forms: manufacturing defect, design defect or inadequate warning. See Feldman v. Lederle Laboratories, supra, 97 N.J. at 449; cf. N.J.S.A. 2A:58C-2. He found plaintiff's claim to be that defendant's cigarettes were defective in design, i.e., designed so as to be not reasonably fit, safe and suitable for human use at the time they were placed in the stream of commerce. Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150, 169 (1979); N.J.S.A. 2A:58C-2. Judge Lucchi said,

*382 ... A design defect claim would not have the effect of frustrating Congress's objective in enacting the federal statute and does not conflict with the act's two-fold purpose of providing warning to the public and protecting national economic interests. For these reasons we hold that plaintiff's claim of design defect based upon factors other than inadequate warning is not preempted by the act. [216 N.J. Super. at 356].
We agree with Judge Lucchi's analysis. Nothing in the history or wording of the Labeling Act suggests that cigarette manufacturers were to be insulated by Congress from the consequences of their conscious avoidance of inexpensive measures known to them to have the capacity to lessen or remove known health risks incidental to the consumption of their product.[5]
On appeal, defendant also claims, however, that plaintiff's design-defect cause has been eliminated by the July 1987 enactment of a New Jersey Products Liability Law, N.J.S.A. 2A:58C-1 et seq. (Products Liability Law).[6] Judge Lucchi's opinion preceded this amendment. Based upon the then applicable law, he said,
At this juncture of the litigation, we cannot say that the minds of reasonable men could not differ on whether the risks posed by cigarettes outweigh their utility. We believe therefore that plaintiff should be accorded the opportunity to carry her burden of producing sufficient evidence on the risk-utility factors to establish whether cigarettes are a defective product. In pursuing her claim for design defect, plaintiff need not prove the existence of alternative, safer designs since a jury may conclude that the risks posed by cigarette use outweighs their utility.... Plaintiff will be entitled to offer, as part of the risk-utility analysis, proof of the "state-of-the-art" respecting cigarette manufacture (i.e. that defendant had the technological expertise to minimize the unavoidable dangers attendant to cigarette smoking). [216 N.J. Super. at 357-358.]
While this appeal was pending, Judge Sarokin, in an unpublished opinion of October 27, 1987 (Cipollone v. Liggett Group, *383 Inc., No. 83-2864 (D.N.J. Oct. 27, 1987) [available on WESTLAW, 1987 WL 14666], reconsideration denied (D.N.J. Dec. 28, 1987) [available on WESTLAW, 1987 WL 31763],[7] reviewed the effect of the Products Liability Law in a similar context. In a ruling upon which defendant relies, he said that a risk-utility theory of product liability no longer applied in New Jersey to cases asserting a cause of action based upon the harm caused by cigarette smoking.[8]
Our analysis leads us to conclude that the risk-utility analysis requires a modification in this case, not dismissal. By section 8 of the Products Liability Law,[9] the Legislature declared its intention to subject pending cases to what it had determined was the existing common law of product liability. N.J.S.A. 2A:58C-3a(2) of the Products Liability Law reads as follows:
In any product liability action against a manufacturer or seller for harm allegedly caused by a product that was designed in a defective manner, the manufacturer or seller shall not be liable if:
* * * * * * * *
(2) The characteristics of the product are known to the ordinary consumer or user, and the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended, except that this paragraph shall not apply to industrial machinery or other equipment used *384 in the workplace and it is not intended to apply to dangers posed by products such as machinery or equipment that can feasibly be eliminated without impairing the usefulness of the product....
The relevant legislative committee statements said that N.J.S.A. 2A:58C-3a(2) was based upon and codified sec. 402A of 2 Restatement, Torts 2d (1965) comment i, which represented existing law. (See Senate Judiciary Committee Statement Senate Committee Substitute for Senate, No. 2805; Assembly Insurance Committee Statement to Senate, No. 2805.) Section 402A reads:
(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
Comment i explains the term "unreasonably dangerous" in section 402A, which has been replaced in New Jersey by the more understandable phrase, not "reasonably suitable, safe and fit for the purposes for which [the] goods have been sold." Suter v. San Angelo Foundry & Machine Co., supra, 81 N.J. at 169.
i. Unreasonably dangerous. The rule stated in this Section [402A] applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption. Ordinarily sugar is a deadly poison to diabetics, and castor oil found use under Mussolini as an instrument of torture. That is not what is meant by "unreasonably dangerous" in this Section. The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. ...
The comment then gives three examples of the difference between a product known to be dangerous and one which is adulterated.

*385 ... Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fusel oil, is unreasonably dangerous. Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous. Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous. [Emphasis added].
Defendant urges on appeal that the application of the comment i limitation on a manufacturer's liability entitles it to summary judgment because decedent was a consumer who expected smoking to be harmful and because, under comment i, cigarettes cannot be considered "unreasonably" dangerous unless they are adulterated, a claim which plaintiff has not asserted.
In general, it is a fair reading of N.J.S.A. 2A:58C-1 et seg., in light of the legislative history, that the Legislature was of the opinion that the principles of comment i were codified as a part of the existing common law and thus applicable to pending cases.[10] But, this by no means requires the ruling defendant urges. We first reject the applicability of the comment i example relating to tobacco. We do not agree with defendant *386 that it is clear that its product was indisputably "good tobacco." It is a manufactured object, subject to many design variations.
Respecting the consumer-expectation test in general, defendant's reliance upon out-of-context statements of our Supreme Court suggesting that the applicability of a consumer-expectation test precludes the application of a risk-utility test is misplaced. Manufacturers have been held liable upon a plaintiff's showing that a design was defective because it failed to meet a reasonable consumer-expectation of product safety, obviating plaintiff's having to establish risk-utility factors in order to recover. It is in this context that the consumer-expectation-of-safety test in O'Brien v. Muskin Corp., 94 N.J. 169, 182 (1983), was termed by the Supreme Court "[a]nother standard" of product liability. A consumer-expectation-of-safety rationale which expands manufacturer liability is to be distinguished from a consumer-expectation-of-danger defense as asserted in comment i (or reflected in N.J.S.A. 2A:58C-3a(2)).[11]
We regard the confusion created by plaintiff's risk-utility claim and defendant's consumer-expectation assertions to have obscured the posture of this case. We have no quarrel with defendant's proposition that plaintiff may not recover if a factfinder concludes that the death of her decedent was caused in large measure from exposure to the danger inherent in all cigarettes, a danger acknowledged to be within his contemplation as an ordinary consumer. That proposition, however, does not compel a legal conclusion that there are no facts at issue material to defendant's liability concerning defendant's cigarettes as defendant designed them and decedent smoked them, particularly, as Judge Lucchi said, whether "defendant had the technological expertise to minimize the unavoidable [i.e. inherent] dangers attendant to cigarette smoking." (216 N.J. Super. *387 at 358).[12] Comment i is a limitation on the imposition of liability despite the exercise of all possible care. It is irrelevant to a claim that plaintiff's decedent's death was caused in a large measure by exposure to a danger not inherent in good tobacco or in, as defendant described them, "well made cigarettes."[13] In our view, therefore, comment i, which we accept as relevant, does not entitle defendant cigarette manufacturer to summary judgment in a case which long antedated the Product Liability Law and there is no evidence that the Legislature intended that it should.[14]
In affirming the interlocutory rulings of Judge Lucchi, we note that the jury instruction necessary to present plaintiff's risk-utility theory must be modified. See Cepeda v. Cumberland Engineering Co., Inc., 76 N.J. 152, 174 (1978). Judge Lucchi listed the seven factors of a risk-utility analysis as they were stated in O'Brien v. Muskin Corp., supra, 94 N.J. at 182. It is axiomatic that not all of those factors should be considered by the jury in every case. Cepeda v. Cumberland Engineering Co., Inc., supra, 76 N.J. at 174. As to those factors concerning which the minds of reasonable people "could not differ on whether the risks posed by a product outweigh its *388 utility, or vice versa, then the court [should] make the appropriate determination as a matter of law." O'Brien v. Muskin Corp., supra, 94 N.J. at 186. While the jury should not be asked to compare the risks and utility inherent in cigarette smoking nor to make findings of fact concerning whether decedent was adequately warned of those risks, plaintiff should be permitted to go forward with her cause of action.[15]
Thus modified, Judge Lucchi's denial of defendant's summary judgment motion is affirmed.
NOTES
[1] Defendants R.J. Reynolds and American Brands did not participate in these appeals. The subject matter is but one part of the litigation, representing plaintiff's decedent's asserted use of defendant's product beginning in 1977. (See 108 N.J. 198 (1987).)

Pending oral argument, both parties submitted additional briefs, assertedly pursuant to R. 2:6-11(d). Although we regard them as substantially beyond the scope of the rule, we nonetheless grant plaintiff's motion, belatedly filed, having considered all of the parties' submissions.
[2] In general, if the question is considered one of constitutional interpretation, the judge would not be obliged to be guided by the federal courts, and if one of federal statutory interpretation, he was required to give respect to the views of the Circuit Court. See State v. Norflett, 67 N.J. 268 (1975); State v. Coleman, 46 N.J. 16, 36 (1965), cert. den. 383 U.S. 950, 86 S.Ct. 1210, 16 L.Ed.2d 212 (1966); Associates Commercial Corp. v. Wallia, 211 N.J. Super. 231, 237 (App.Div. 1986); compare Southern Pacific Co. v. Wheaton Brass Works, 5 N.J. 594, 598 (1950), cert. den. 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed. 1343 (1951); Cassatt v. First Nat. Bank, West New York, 111 N.J.L. (26 Gummere) 536, 544 (E. & A. 1933); Urb. League New Bruns. v. Mayor & Coun. Carteret, 170 N.J. Super. 461, 469 (App.Div. 1979), rev'd o.g. 92 N.J. 158 (1983); Checker Van Lines v. Siltek International, Ltd., 169 N.J. Super. 102, 105 (App.Div. 1979); Penbrook Hauling Co. v. Sovereign Const. Co., 128 N.J. Super. 179, 185, 319 A.2d 277 (Law Div. 1974), aff'd o.b. 136 N.J. Super. 395 (App.Div. 1975).
[3] Individual damage claims may have a regulatory effect. See Fidelity Fed. Sav. & Loan Ass'n. v. De la Cuesta, 458 U.S. 141, 156-159, 102 S.Ct. 3014, 3024-3025, 73 L.Ed.2d 664, 677-679 (1982). The question is whether Congress so intended in the Act.
[4] Plaintiff's counsel has brought to our attention a recent Minnesota case, Forster v. R.J. Reynolds Tobacco Co., 423 N.W.2d 691 (Minn. Ct. App. 1988). This case appears to make no distinction between preemption of all tort liability based on smoking and preemption of a claim based exclusively on an asserted failure to warn.
[5] Nor do we consider that plaintiff, in her response to defendant's motion, was bound by her failure to use the words "defective design" in her complaint. To the extent that plaintiff's complaint was deficient, the judge properly looked to the entire record, giving plaintiff every favorable inference. (216 N.J. at 356). See Judson v. Peoples Bank & Trust Co. of Wesfield, 17 N.J. 67, 74 (1954).
[6] L. 1987, c. 197, effective July 22, 1987.
[7] This opinion interpreted the published opinion in the same matter and is referred to because it was relied upon by counsel. For that reason we relax R. 1:36-3.
[8] Judge Sarokin at that time expressly preserved, however, plaintiff Cipollone's alternative-design theory as well as any cause of action based upon a claim of adulterated cigarettes, distinctions crucial to an understanding of this appeal.
[9] This section provides that, "This act shall take effect immediately except that provisions of this act that establish new rules with respect to the burden of proof or the imposition of liability in product liability actions shall apply only to product liability actions filed on or after the date of enactment." [L. 1987, c. 197, sec. 8 (N.J.S.A. 2A:58C-1 note)].
[10] Whether the Legislature erred in its view of the common law and whether interested parties lobbied for the Product Liability Law are irrelevant questions. In light of this conclusion, we need not address plaintiff's assertion that certain committee statements were not written at the time that the bill was voted upon by the Legislature. Section 1 of the Law says, "... the Legislature further finds that such sponsors' or committee statements that may be adopted or included in the legislative history of this act shall be consulted in the interpretation and construction of this act." (N.J.S.A. 2A:58C-1). Obviously, pertinent and relevant legislative history must be consulted if necessary to determine legislative intent where there is an ambiguity or uncertainty in the statutory language. See Department of Health v. Sol Schnoll Dressed Poultry Co., 102 N.J. Super. 172, 175-176 (App.Div. 1968). We have noted that certain of the statements in the legislative history express opinions and interpretation of prior case law and other authorities, including the Restatement of Torts 2d and comments thereto. We consider relevant committee statements in construing legislative intent concerning prospectivity of the Law's terms. They are obviously not binding concerning the substance of the common law. See Deaney v. Linen Thread Co., 19 N.J. 578, 584-585 (1955).
[11] While legislative history focuses upon the consumer-expectation test of comment i, see N.J.S.A. 2A:58C-1, the language of N.J.S.A. 2A:58C-3a(2) stresses the obviousness of a product's danger.
[12] We note that plaintiff contends that she is prepared to proceed upon an alternative-design theory, which is one of the risk-utility factors. See Shackil v. Lederle Laboratories, 219 N.J. Super. 601, 618 (App.Div. 1987), app. granted 109 N.J. 519 (1987).
[13] Moreover, the consumer-expectation standard of comment i as reflected in N.J.S.A. 2A:58C-3a(2) (as well as the extent to which the harm was caused by plaintiff's decedent's voluntary assumption of the known risk of smoking) is a defense, subject to the application of the principles of comparative fault in a prestatute case. See Rivera v. Westinghouse Elevator Co., 107 N.J. 256, 260 (1987).
[14] We have no occasion to determine the viability of plaintiff's claim under any relevant law should plaintiff establish that defendant deliberately suppressed alternative and inexpensive safer designs for reasons unrelated to the design's utility. At oral argument before us defendant postulated that no conduct on the part of defendant could be the basis of liability so long as defendant complied with the Labeling Act, a position which we reject.
[15] In Fischer v. Johns-Manville Corp., 103 N.J. 643, 654 (1986), the Court cited O'Brien v. Muskin Corp., supra, 94 N.J. at 181-184, for the proposition that the "risk-utility analysis to evaluate [a] product's safety is sometimes phrased to inquire whether [a] reasonable manufacturer, fully aware of [the] dangers posed by [the] product [as designed], would have manufactured and marketed it as he did."